THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
DONALD ELKINS, Defendant-Appellee.

Second District   No. 77-169

Opinion filed June 14, 1978.

Peter J. Woods, State's Attorney, of Oregon (Phyllis J. Perko and Jan Tuckerman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mary Robinson and Mark J. Heyrman, both of State Appellate Defender's Office, of Elgin, for appellee.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:
The defendant, while an inmate of the Ogle County Jail, was arrested and charged with the unlawful possession of controlled substances. The trial court granted the defendant's motion to suppress physical evidence taken from in and around the defendant's jail bunk, and certain statements which had been made by the defendant. The State appeals.

The evidence adduced at the hearing on the defendant's suppression motion can be summarized as follows: On March 5, 1976, one of the defendant's cellmates told guards at the Ogle County Jail that the

defendant had drugs, including marijuana, concealed in the cellblock. The informant arranged to see Sheriff Brooks, and told him about the drugs. After the informant was returned to his cell, Sheriff Brooks told Lieutenant Wilkinson, a member of his staff who had just come on duty, that he felt that there might be some drugs in the cells, and ordered him to conduct a "shake-down" of the jail. Sheriff Brooks did not mention the defendant or that the drugs were likely to be found in the defendant's cellblock, since he "didn't know how much was in any of the cells" and so he "just told them to conduct a complete shake-down of the entire jail." Sheriff Brooks stated that his staff tries to hold a "shake-down" search once a week or "anytime" that the correctional officer in charge feels that such a search should be conducted.

Lieutenant Wilkinson carried out Sheriff Brooks' instructions, searching all five cellblocks in turn. The defendant's cellblock was the fourth one to be searched. When Lieutenant Wilkinson entered the cellblock, he asked each person individually to identify his bunk. There were four inmates in the cellblock at the time of the search. When the defendant was asked which bunk was his he pointed to a particular bunk, which the officers then searched; the officers found a sock containing the alleged controlled substances in the bunk and three hand-rolled cigarettes on a shelf next to the bunk.

The defendant was taken to a conference room and advised of his rights. After acknowledging that he understood his rights, the defendant stated that he was "aware of" the drugs, but that they were not his, and he was "holding them for somebody else." At the "suppression" hearing, the State and defense stipulated that the search of the defendant's cell had been conducted without a warrant. The trial court then held that the authorities had had adequate time in which to obtain a warrant, and that the search had not been "administrative" in nature, since it was a "search for evidence based on information from an informer." The court, therefore, ruled that the search had been unlawful and that any statements given by the defendant were the "fruit" of the unlawful search. On this basis, the court granted the defendant's suppression motion, both as to physical evidence and the statements by the defendant.

■■ We believe that the trial court was in error. While "[t]here is no iron curtain drawn between the Constitution and the prisons of this country," and imprisonment does not wholly strip a prisoner of his constitutional protections, "[l]awful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen * * *." (*Wolff v. McDonnell* (1974), 418 U.S. 539, 555-56, 41 L. Ed. 2d 935, 950, 94 S. Ct. 2963, 2974.) As the court noted in *Lanza v. New York* (1962), 370 U.S. 139, 143, 8 L. Ed. 2d 384, 388, 82 S. Ct. 1218, "* * * it is obvious that a jail shares none of the attributes of privacy of a home, an automobile, an

office, or a hotel room." Thus, although a prisoner may enjoy some residual protection under the Fourth Amendment, against unreasonable searches and seizures, "[t]o hold that known cause comparable to that required for a search warrant in private life must precede such a [prison] search would be completely unrealistic." (*Daughtery v. Harris* (10th Cir. 1973), 476 F.2d 292, 294-95.) In the case at bar, the information given the sheriff indicating that the defendant was in possession of unlawful drugs, raised the possibility that drugs had been passed to other inmates as well. The presence of unlawful drugs in the jail posed an obvious threat to the administration and objectives of that institution, and the warrantless search of defendant's cellblock, as well as of the other cellblocks, was clearly not an unreasonable search under the Fourth Amendment. It would have been entirely reasonable and proper for the jail officers to have conducted the search questioned by defendant, either with or without prior information of the presence of contraband, for drugs, weapons or other things threatening to the security of the jail or its inhabitants. In these circumstances an inmate of a jail cannot assert a Fourth Amendment bar to a warrantless search.

■■ While the trial court, in holding that statements made by the defendant immediately prior to and after his arrest should be suppressed as the fruit of the search, did not reach the merits of the defendant's contention that the statements were obtained in violation of his *Miranda* rights, our holding that the warrantless search was not unlawful and that the court erred in suppressing the physical evidence makes it necessary for us to explore the defendant's contention that his *Miranda* rights were violated. (See *People v. Roberson* (1977), 46 Ill. App. 3d 750.) The defendant's specific assertion is that *Miranda* warnings should have been administered before the defendant was asked to identify his bunk, and that the subsequent statements in the conference room were the product of the "interrogation" regarding the bunk. However, we do not believe that it was necessary for Lieutenant Wilkinson to administer *Miranda* warnings to the defendant prior to asking him to identify his bunk. This request was not an interrogation meant to elicit an incriminating admission from defendant but only intended to identify and locate the four inmates occupying the cell. (See *People v. Morrissey* (1977), 49 Ill. App. 3d 622, 627; *People v. Turner* (1971), 2 Ill. App. 3d 11, 15.) The request that the defendant identify his bunk was no different from the request made of every other prisoner in the cellblock. Thus, although the defendant was obviously in custody when Wilkinson asked him to identify his bunk, we do not believe that *Miranda* warnings were required prior to such a routine and preliminary inquiry, which was a normal incident of jail administration. *Cf. People v. Hicks* (1970), 44 Ill. 2d 550, *cert. denied* (1970), 400 U.S. 845, 27 L. Ed. 2d 81, 91 S. Ct. 90; *People v.*

*Dunn* (1975), 31 Ill. App. 3d 854, *cert. denied* (1976), 426 U.S. 950, 49 L. Ed. 2d 1187, 96 S. Ct. 3171 (holding that no *Miranda* warnings were required prior to preliminary on-scene questioning).

For the foregoing reasons, the trial court's order granting the defendant's suppression motion is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

GUILD and NASH, JJ., concur.