THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EDDIE LEE MYLES, Defendant-Appellant.

Second District   No. 77-234

Opinion filed August 9, 1978.

Ralph Ruebner and Rosetta Hillary, both of State Appellate Defender's Office, of Elgin, for appellant.

Daniel Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Jan Tuckerman, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE NASH delivered the opinion of the court:

The defendant, Eddie Myles, was convicted of murder following a bench trial and sentenced to a term of 14 to 25 years' imprisonment. His sole contention on appeal is that the court erroneously admitted evidence which was the fruit of illegal eavesdropping.

On March 19, 1976, Bruce Tennin, the 13-year-old son of the proprietors of the Rock Tap, was shot and killed in his family's tavern. Defendant left the scene but, upon learning the police were looking for him, called them and was taken into custody the following day. He was advised of his *Miranda* rights, told several versions of the shooting to the officers and signed a written statement. In that statement, which was admitted in evidence at trial, defendant said he was at the Rock Tap with his mother, two sisters and his brother Robert and that another of his brothers, Joe, got into a fight near the pool table with Edmond Hughes.

He said the two men and other combatants went outside and continued fighting and that his niece told him Joe had been struck with a pool cue and knocked out. Defendant stated he went outside and the niece identified Hughes as Joe's attacker. Hughes re-entered the tavern and defendant followed him and pointed a gun behind the bar where he had been told Hughes was hiding. Defendant said he picked up a chair and hit Hughes and that the gun, which he had forgotten was cocked, went off accidentally. Defendant left with members of his family and returned the gun to a friend named Milton, who had given it to him earlier. Other witnesses testified at trial that Myles leaned over the bar and fired a shot down behind it. The decedent, Hughes and others had ducked behind the bar during the altercation; Bruce Tennin was struck by a bullet. On March 21 defendant's wife brought a .38-caliber revolver to the police station and gave it to the officers. It was identified at trial by a ballistics expert as the gun which fired the bullet which killed Bruce Tennin.

At a hearing held prior to trial on defendant's motion to suppress eavesdropping evidence, defendant contended the gun was obtained by police as a result of their illegal monitoring of a telephone call defendant made to his wife from the jail on March 21 and that police used information from the illegally monitored conversation to cause defendant to surrender the gun to them. He argued that the conversation was listened to by officers in violation of his Federal and State constitutional rights and in violation of section 14—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 14—2) and contended that the gun, being the fruit of the illegal eavesdropping, must, therefore, be excluded from evidence together with all testimony of the monitored conversation.

Detective Arbisi of the Winnebago County Sheriff's Department testified at the suppression hearing that he saw defendant in the jail on March 21 and inquired whether defendant had been allowed to make the phone calls he had requested earlier. According to Arbisi, defendant told him he wanted to tell the police more about the shooting and said his brother Willie had also fired a gun in the Rock Tap on the night of the murder. At defendant's request, Arbisi permitted him to call his wife from a telephone located in the bullpen section of the jail. Photographs of the telephone area which were admitted in evidence show a large sign over the phone with two-inch lettering reading "All calls monitored." A similar sign with smaller print was located on the wall next to the phone.

Without defendant's knowledge, a deputy sheriff listened to defendant's conversation with his wife on another line connected to the bullpen phone. The deputy reported they discussed witnesses to the shooting and defendant advised his wife not to talk too much on the phone. He also told her his brother Willie had fired three or four shots and that his own shot had gone up in the air. Defendant's wife said that he had

nothing to hide by turning in the gun and defendant stated he was going to tell the police everything. His wife then said she thought Milton had the gun and that she would get it. After Detective Arbisi talked to the deputy who had monitored the telephone conversation, he again talked with defendant. While Arbisi did not tell defendant the conversation with his wife had been overheard, he did say the police believed defendant's wife had the gun or could obtain it. Defendant again told Arbisi he was sure his shot had not killed the boy and he then called his wife again on the bullpen telephone and told her to bring the gun to the jail.

Defendant testified at the hearing that he did not pay any attention to the signs on the wall near the phone and that he was never told his calls would be monitored.

The trial court ruled that the conversation between defendant and his wife had been illegally monitored as defendant had not consented to the deputy listening and it excluded testimony of the conversation between defendant and his wife and defendant's subsequent conversation with Detective Arbisi, but found that the gun was not the product of the illegal eavesdropping and admitted it in evidence at the trial.

■■ Generally, evidence obtained as a direct result of an illegal police search or seizure must be suppressed (*Weeks v. United States* (1914), 232 U.S. 383, 58 L. Ed. 652, 34 S. Ct. 341; *Elkins v. United States* (1960), 364 U.S. 206, 4 L. Ed. 2d 1669, 80 S. Ct. 1437; *Davis v. Mississippi* (1969), 394 U.S. 721, 22 L. Ed. 2d 676, 89 S. Ct. 1394) and that exclusionary rule has been extended under some circumstances to encompass "evidence indirectly discovered as a result of information gained from an unlawful search or seizure * * *." (*People v. Holdman* (1977), 51 Ill. App. 3d 484, 490, 366 N.E.2d 993, 998; *Silverthorne Lumber Co. v. United States* (1920), 251 U.S. 385, 64 L. Ed. 319, 40 S. Ct. 182; *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407.) The two functions of the rule excluding evidence found to be the "fruit of the poisonous tree" are to deter constitutonal violations by eliminating their usefulness and, secondarily, to avoid a situation by which the court condones a violation of constitutional rights by acquiescing in the use of its fruits. The application of the exclusionary rule has been restricted to those cases where these purposes are paramount; it is not intended to redress injury to the privacy of the victim of an illegal search but primarily to safeguard fourth amendment rights by its deterrent effect. (*United States v. Calandra* (1974), 414 U.S. 338, 347-48, 38 L. Ed. 2d 561, 571, 94 S. Ct. 613, 619-20.) All evidence

   " * * * cannot be characterized as fruit of the poisonous tree merely because it would not have come to light but for the illegal actions of the police, and the test to be applied is whether the evidence to which objection is made resulted from an exploitation

of the illegality or by means sufficiently distinguishable to be purged of the primary taint." (*People v. Faulisi* (1977), 51 Ill. App. 3d 529, 533-34, 366 N.E.2d 1072, 1076; *Wong Sun v. United States* (1963), 371 U.S. 471, 488, 9 L. Ed. 2d 441, 455, 83 S. Ct. 407.) The United States Supreme Court has not adopted a "but for" rule in determining whether the exclusionary rule will apply to evidence obtained as a result of an illegal search and has held that it must be considered on a case by case basis to determine whether the evidence was obtained by an improper exploitation of the illegal conduct of the police or was sufficiently removed from the illegality under *Wong Sun* so as not to require its exclusion. See *Brown v. Illinois* (1975), 422 U.S. 590, 603-04, 45 L. Ed. 2d 416, 427, 95 S. Ct. 2254, 2261-62.

■■ In the present case it is apparent that the gun was not obtained as a result of the monitored telephone conversation. Defendant believed it was not his bullet which had killed the boy and his wife urged him to turn over the gun to the officers. He also expressed to her that he would tell them everything. He did then talk further with Detective Arbisi and called his wife again and told her to bring in the gun. Under these facts the acquisition of the gun by the police cannot be considered to be a result of the monitored conversation; the gun was acquired by the officers by reason of its voluntary surrender by defendant and his wife who expected to establish that it was not the murder weapon. In these circumstances the trial court correctly admitted the gun and testimony regarding it in evidence.

■■■ Had we found the police acquisition of the gun to have been the direct result of their monitoring of the phone call, however, it still would not have been subject to exclusion because, in our view, the monitoring of the jail telephone as described in this case is not prohibited by the eavesdropping statute (Ill. Rev. Stat. 1975, ch. 38, par. 14—1 *et seq.*) nor did it constitute a violation of a right of defendant under the United States or Illinois constitutions.

Section 14—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 14—2) prohibited the use of eavesdropping devices to hear or record any part of a conversation without the consent of all parties to the conversation or without the consent of one party and at the request of a State's Attorney.[1]

While section 14—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 14—3) does not specifically exempt telephone calls made by a prisoner from a jail from the proscriptions of the statute, it is apparent the statute was intended to protect individuals from the surreptitious

---

[1] The section was amended effective July 1, 1976, to delete the requirement that the State's Attorney request the eavesdropping and to require judicial supervision pursuant to the Code of Criminal Procedure. Ill. Rev. Stat. 1975, ch. 38, par. 108A.

monitoring of their conversations by the use of eavesdropping devices. (1974 Op. Ill. Att'y Gen. 155, 158; see *People v. Klingenberg* (1975), 34 Ill. App. 3d 705, 708, 339 N.E.2d 456, 459.) Persons using the telephone in the jail bullpen area were adequately warned their conversations would be monitored by the two large signs next to it. Defendant's statement to his wife that she shouldn't talk too much on the phone suggests he was aware their conversation could be overheard. In construing a statute the primary purpose is to ascertain and give effect to the intention of the legislature. (*People ex rel. Cason v. Ring* (1968), 41 Ill. 2d 305, 242 N.E.2d 267.) We do not believe the General Assembly intended to prohibit the monitoring of outgoing calls from a jail inmate under the circumstances seen in this case.

■■ Further, the monitoring of the telephone conversation between defendant and his wife did not violate defendant's right to be free from unreasonable searches and seizures under the fourth amendment to the United States Constitution or article 1, section 6 of the Illinois Constitution of 1970. A phone maintained in a jail for prisoner use shares none of the attributes of privacy of a home or automobile or even a public phone booth. *Lanza v. New York* (1962), 370 U.S. 139, 8 L. Ed. 2d 384, 82 S. Ct. 1218; see *Katz v. United States* (1967), 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507.) Lawful imprisonment does erode many of the prisoner's rights. This court has upheld the authority of jail officials to search a jail cell without a warrant in the interest of the security of the jail and its inhabitants. (*People v. Elkins* (1978), 60 Ill. App. 3d 883, 377 N.E.2d 569.) It has also been held that there is no reasonable expectation of privacy in an ordinary jailhouse conversation between spouses. (*People v. Hill* (1974), 12 Cal. 3d 731, 528 P.2d 1, 117 Cal. Rptr. 393.) No expectation of privacy was created by the circumstances of the case at bar and, as the monitoring of the conversation was not an illegal search or seizure, it was not subject to exclusion.

For the reasons stated, the judgment of the Circuit Court of Winnebago County is affirmed.

Affirmed.

BOYLE and GUILD, JJ., concur.