THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
MELVIN CLARK, Defendant-Appellee.
Fifth District   No. 5—83—0497

Opinion filed July 9, 1984.

John Baricevic, State's Attorney, of Belleville (Stephen E. Norris and Mary W. Richardson, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Daniel E. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellee.

PRESIDING JUSTICE WELCH delivered the opinion of the court:

Defendant Melvin Clark was arrested as a suspect in the burglary of BAC Video in Fairview Heights, Illinois. He was informed of his rights and placed in a holding cell at the Fairview Heights police department. After his arrest, police overheard his statements to another detainee at the jail. The admissibility of these statements is the subject of this appeal.

On July 5, 1983, the defendant filed a motion to suppress his alleged confession, contending it was obtained with an eavesdropping device without judicial approval allegedly in violation of the Illinois eavesdropping authorization statute (Ill. Rev. Stat. 1983, ch. 38, par. 108A—3). The facts were established in a hearing on the defendant's

motion to suppress.

Three witnesses were called at the hearing. The only witness for the defense was the defendant himself. Melvin Clark testified that he was taken to the police station and never warned that his conversations in the jail cell would be listened to by police.

Detective Sergeant Patrick J. Prindable of the Fairview Heights police department testified for the State. He stated that he placed the defendant under arrest for burglary, advised him of his *Miranda* rights and took him to the station, where the defendant was placed in a holding cell.

Detective Prindable also testified concerning the procedures for the operation of the detention facility at the Fairview Heights police department. He identified, as People's exhibit No. 1, general order No. 21 for the operation of the detention facilities, which was in effect at the time of the defendant's arrest. He explained, as supervisor of the facility, that the procedure followed was to make visual contact every 60 minutes with the prisoners detained in the cell area, while audio monitoring of the detainees was conducted on a continuous basis.

The holding area contains seven cells, including three in the area where the defendant was detained. Prindable stated that officers are not physically present in the cell area absent a specific need to process a detainee. There exists between the cell block and the booking area a steel door with windows in it, through which voices can be heard. In addition, a device exists in the hall ceiling of the cell block to monitor communication within the cell block. Such communications are monitored in an upstairs dispatcher's room to which only police personnel have access.

The detective explicitly testified at the July 7, 1983, suppression hearing that the purpose of police in monitoring conversations was to ensure the safety of prisoners, especially in the event of illness. The system, he stated, is maintained to protect prisoners and is not an investigative tool. Unmonitored areas are maintained so prisoners can speak freely with their lawyers or relatives, he stated. Detective Prindable testified that no departmental policies were violated in the booking or holding of the defendant at the Fairview Heights police department's detention facility.

On cross-examination, Prindable stated that the department had not asked a circuit court judge for permission to eavesdrop in the jail. He also testified that the defendant was not told that all conversations in the holdover cells are monitored.

In addition, Jeffrey Stratman, communications officer for the

Fairview Heights police department, also testified for the State. Stratman testified that he was monitoring the cell area on January 13, 1982, when he heard the defendant make incriminating statements. At this point, he stated, he notified another police officer, Sergeant Fredeking, an investigator, who then came to the communications center to hear the defendant's statements. The communications officer identified People's exhibits Nos. 2 and 3, photographs of speakers located in the cell area. These photographs, included in the record on appeal, establish that the detention facility's intercom system was clearly visible from the defendant's cell. On cross-examination, Stratman testified that the monitoring system is maintained for prisoner safety. He stated that while he was monitoring the defendant he heard no indication of a fight in progress.

After hearing the testimony recounted above, the circuit court of St. Clair County ordered the defendant's statements suppressed. The State appeals, asserting that Illinois law does not preclude the monitoring of jail detainees. We agree.

■ It is settled law that imprisonment erodes many of the prisoner's rights, including, under certain circumstances, any expectations of privacy in ordinary jailhouse conversations. In *Lanza v. New York* (1962), 370 U.S. 139, 8 L. Ed. 2d 384, 82 S. Ct. 1218, the United States Supreme Court reviewed a case involving the electronic interception of a conversation between a prisoner and a visitor. In that case, jail officials listened to and transcribed a conversation in the visitor's room at the jail. The visitor, Lanza, was subsequently called before a State legislative committee studying possible corruption in the State's parole system. He refused to answer questions, despite an offer of immunity, and was convicted of a misdemeanor. He later attacked the conviction, arguing that the committee's questions were based on information obtained in violation of fourth amendment principles incorporated into the due process clause of the fourteenth amendment. The court rejected his argument, stating:

> "*** to say that a public jail is the equivalent of a man's 'house' or that it is a place where he can claim constitutional immunity from search or seizure of his person, his papers, or his effects, is at best a novel argument. To be sure, the Court has been far from niggardly in construing the physical scope of Fourth Amendment protection. A business office is a protected area, and so may be a store. A hotel room, in the eyes of the Fourth Amendment, may become a person's 'house,' and so, of course, may an apartment. An automobile may not be unreasonably searched. Neither may an occupied taxicab. Yet, with-

out attempting either to define or to predict the ultimate scope of Fourth Amendment protection, it is obvious that a jail shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room. In prison, official surveillance has traditionally been the order of the day. Though it may be assumed that even in a jail, or perhaps especially there, the relationships which the law has endowed with particularized confidentiality must continue to receive unceasing protection, there is no claimed violation of any such special relationship here." *Lanza v. New York* (1962), 370 U.S. 139, 143-44, 8 L. Ed. 2d 384, 387-88, 82 S. Ct. 1218, 1220-21.

More recently, in *United States v. Hearst* (9th Cir. 1977), 563 F.2d 1331, the Ninth Circuit addressed a factually similar situation. In that case, defendant Patricia Hearst was in custody at the San Mateo County Jail when she received a visit from a childhood friend. Their conversation, in the jail's visiting room, was monitored and recorded by a deputy sheriff, pursuant to an established jail security policy. Jail officials had decided to record all of the defendant's conversations in accordance with the policy for "very publicized cases or high security problems." (*United States v. Hearst* (9th Cir. 1977), 563 F.2d 1331, 1344.) The tape of the conversation was delivered to the FBI and the prosecution. Defendant Hearst attacked the use of the tape for several reasons, including her contention that the monitoring and recording of her conversations in jail violated her fourth amendment rights.

The Ninth Circuit relied on *Lanza* in rejecting this argument and emphasized that the *Lanza* decision still had significant precedential value. The court recognized that intrusions by jail officials pursuant to a policy with a justifiable purpose of imprisonment or prison security is no violation of the fourth amendment because of "*** the government's weighty, countervailing interests in prison security and order." (*United States v. Hearst* (9th Cir. 1977), 563 F.2d 1331, 1345.) The *Hearst* court held that the government had adequately established that the procedure in question was a reasonable means of maintaining prison security; therefore, no fourth amendment violation was established. The court also noted that defendant had made no direct allegation that jail authorities had monitored the conversation for any purpose other than prison security or that jail officials used prison security as a guise for an effort to gain incriminating evidence. *United States v. Hearst* (9th Cir. 1977), 563 F.2d 1331, 1347 n. 12.

Similar reasoning has been employed by Illinois courts. In *People v. Myles* (1978), 62 Ill. App. 3d 931, 379 N.E.2d 897, the defendant in a murder case telephoned his wife from a telephone located in the

bullpen section of the jail. Over the phone was a large sign with two-inch lettering reading "All calls monitored." A deputy listened to the defendant's conversation concerning the crime and the murder weapon. The defendant's wife brought the weapon to the police station and surrendered it to officers. The trial court found the gun was not the product of an illegal eavesdropping, but the trial court suppressed testimony about the defendant's conversation with his wife. On appeal, the monitoring of the telephone conversation between the defendant and his wife was held not to violate the defendant's fourth amendment rights. The court relied on *Lanza v. New York* (1962), 370 U.S. 139, 8 L. Ed. 2d 384, 82 S. Ct. 1218, and *Katz v. United States* (1967), 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507, in reasoning that there is no reasonable expectation of privacy in ordinary jailhouse conversations between spouses.

In the case at bar it is uncontroverted that the electronic monitoring system was designed and used to maintain safety at the jail. As in *United States v. Hearst*, defendant makes no direct contention that police used jail security as a guise for an effort to gain incriminating evidence. Moreover, defendant does not assert that his right to counsel was violated by a deliberate effort to obtain incriminating statements in the absence of counsel.

■ While the defendant stated he was not told about the monitoring system, photographs included in the record on appeal establish that the jail intercom system was clearly visible to him. Although the record is unclear as to whether the other detainee was in the same cell as the defendant, nothing of record suggests that there was any hidden microphone powerful enough to hear private conversations. In fact, the opposite is true. The facts of record show that an extremely obvious intercom picked up a conversation in a public area. For these reasons, in accordance with the above cited cases, we hold that the defendant had no reasonable expectation of privacy in his conversation with another detainee. See Annot., 57 A.L.R.3d 172 (1974).

■ We also find unreasonable the defendant's construction of the Illinois eavesdropping authorization statute. (Ill. Rev. Stat. 1983, ch. 38, par. 108A—3.) As we have emphatically stated, the monitoring system in question was plainly essential to maintain the safety and security of the jail. It would be unrealistic for us to hold that information obtained through a legitimate safety-oriented monitoring system could not be used in criminal cases. We decline to read the Act to make such rational and commendable conduct as maintaining jail safety an illegal activity; it is presumed that in formulating a statute the legislature did not intend absurdity, inconvenience or injustice.

614

*Nutrition Headquarters, Inc. v. Department of Revenue* (1984), 123 Ill. App. 3d 997.

For the foregoing reasons, the circuit court's order suppressing defendant's confession is reversed and the case remanded for further proceedings.

Reversed and remanded.

JONES and KASSERMAN, JJ., concur.