**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**FORD MOTOR COMPANY,
Defendant-Appellant,**

**Robert Maier et al.,
Respondents-Appellees.**

**No. 74–2128.**

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 3, 1975.

Decided Sept. 16, 1975.

George E. Brand, Jr., Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich., for defendant-appellant.

Fred M. Mester, Ralph B. Guy, U. S. Atty., Detroit, Mich., William H. McManus, Antitrust Div., Dept. of Justice, Washington, D. C., John W. Frasco, Breskin, Cox & Frasco, Detroit, Mich., for plaintiff-appellee.

Before EDWARDS, PECK and ENGEL, Circuit Judges.

ENGEL, Circuit Judge.

This is an appeal by Ford Motor Company from the denial by the district court of Ford's application for an injunction directing certain former salaried employees of Ford to discontinue the prosecution of a civil action for breach of

an employment contract in the Circuit Court for Wayne County, Michigan. The district judge also awarded $2500 attorney fees to the employees because he considered the action of Ford in seeking the injunction to be, if not frivolous, at least unsubstantial. We affirm the denial of injunctive relief, agreeing with the district court that the injunction was barred by the provisions of 28 U.S.C. § 2283.[1] We vacate the award of attorney fees because we conclude that the district court failed to make the necessary findings to justify the fees under traditional equitable principles.

In 1961 the United States[2] filed an antitrust action against Ford and Electric Autolite Company challenging the purchase by Ford of certain assets of Autolite. In 1968 the District Court for the Eastern District of Michigan determined that the acquisition violated Section VII of the Clayton Act, *United States v. Ford Motor Co.,* D.C.Mich., 286 F.Supp. 407, aff'd. 405 U.S. 562, 92 S.Ct. 1142, 31 L.Ed.2d 492 (1972), and in July 1970 the court entered its opinion requiring divestiture of a battery manufacturing plant located at Owosso, Michigan and a spark plug manufacturing plant located at Fostoria, Ohio, *United States v. Ford Motor Co.,* D.C.Mich., 315 F.Supp. 372, aff'd. 405 U.S. 562, 92 S.Ct. 1142, 31 L.Ed.2d 492 (1972). Final judgment to this effect was entered on December 18, 1970. That judgment in pertinent part required that no later than 18 months after the judgment was no longer subject to appeal, Ford should divest itself of the tradename and the trademark "Autolite" and all of its facilities in the United States for the production of automotive battery and spark plugs except for a battery plant located at Shreveport, Louisiana. The judgment specifically provided "Said production fa-

cilities shall be divested in going, viable and operating condition." The judgment perpetually enjoined Ford from re-acquiring control over the divested assets, enjoined it for ten years from manufacturing spark plugs, and made certain other provisions for ensuring the effective divestiture of the assets involved.

Section XV of the judgment provided: "Jurisdiction of this cause is retained by this Court for the purpose of enabling any of the parties to apply at any time for such further orders or directions as may be necessary or appropriate for the construction or carrying out of this Final Judgment, for the modification of any of the provisions thereof, for the enforcement of compliance therewith, and for the punishment of violations thereof."

On August 8, 1971, Globe-Union, Inc., one of the nation's five leading battery manufacturers, offered Ford eight million dollars for the Owosso battery plant provided that Ford would agree to purchase 2.6 million batteries per year for five years at competitive prices. This offer was acceptable to Ford. The proposed sale was approved on October 27, 1971 by the Justice Department. Subsequently, however, Ford learned that, although the plant's hourly employees were protected by the union contracts which Globe offered to assume until the next UAW negotiations in late 1973, Globe did not plan to continue Ford's employee benefits to the plant's salaried employees, but instead intended to place them under Globe's own plans which afforded similar but lesser benefits. Allegedly concerned that the potential reduction in benefits might impair the viability of the plant since salaried employees might consequently refuse employment with Globe, Ford negotiated with

---

1. Section 2283 provides:

 "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

2. Though nominally a party to the appeal, the United States has taken no position with respect to the issues herein, considering it strictly as litigation between Ford and respondent employees.

Globe from August 1971 to January 1972 to secure Globe's continuation of Ford's employee benefit scheme. Included within this scheme was an allowance for separation pay. In return Ford agreed to transfer approximately one million dollars from its pension and retirement trusts to Globe's trust and also to reduce the initially offered purchase price of the plant from eight million dollars to seven million dollars. The details of Globe's assumption of Ford's benefits were described in a handout delivered to salaried employees who were expected to be affected by the sale of the battery plant to Globe. Five of the six respondents-appellees herein signed what Ford denotes a "release" which acknowledged receipt of a copy of the handout.[3] On June 30, 1972 the battery plant was divested to Globe.

On February 28, 1973, six of the former salaried employees of Ford at the Owosso plant filed a class action against Ford in the Wayne County Circuit Court alleging *inter alia* Ford's breach of its contract in failing to pay them their separation allowance when their employment with Ford terminated on June 30, 1972. Of the six individual complainants five had continued at Owosso as employees of Globe.

On May 3, 1974, purportedly relying upon the retained jurisdiction of the district court, Ford filed in the prior federal antitrust action its motion for an injunction of the state court proceedings. United States District Judge Ralph M. Freeman denied the motion, basing his decision primarily upon the finding that the exercise of the court's injunctive powers was not permitted within any of the exceptions of Section 2283. In addition, Judge Freeman noted "that even were the injunction permissible under Section 2283, Ford would still have had to make a showing that they were entitled to injunctive relief under general equity principles."

## SECTION I

### INJUNCTIVE RELIEF

 Ford's appeal asserts that the district judge erred in holding he was without power to grant an injunction against the state proceedings. Ford urges that the facts of this case bring it within both the historical "in rem" and "relitigation" exceptions to Section 2283. The history of the anti-injunction statute has been catalogued frequently and need not be repeated here at length. See *Oklahoma Packing Co. v. Gas Co.,* 309 U.S. 4, 60 S.Ct. 215, 84 L.Ed. 447 (1939); *Atlantic Coast Line R. R. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970); *Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972).

Ford argues that the injunction can be authorized on the basis of the "where necessary in aid of its jurisdiction" exception since the action is basically in rem. As Judge Freeman commented, "Apparently part of the res in this case is alleged to be the Owosso plant." It is unnecessary to decide if the prior antitrust action was, at least in part, an in rem action, since for Ford to succeed it must prove that the state court suit was also in rem. *Penn General Casualty Co. v. Pennsylvania* 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850 (1935). As the district judge correctly noted, the state suit is simply an action for alleged breach of an employment contract: "[S]uffice it to say that the state court suit is not in rem and thus the state court is not interfering with a res in the possession of this court or this court's jurisdiction". See generally, Moore's Federal Practice, 2nd Ed., Vol. 1A, ¶ 0.214. Accordingly, the in rem exception to the anti-injunction statute cannot justify interference with the state court action.

Ford's more serious contention is that the injunction is authorized on the ground that it is necessary to "protect or

---

**3.** The document, in full, stated:

"In connection with the sale of the Owosso Battery Plant to Globe-Union, Inc., I am being released from Ford Motor Company to accept employment with Globe-Union, Inc. I have read and understood the terms of my release as described on the hand-out entitled, 'Effect on Salaried Employees'."

effectuate" the prior antitrust decree. This exception to the anti-injunction statute, sometimes described as the relitigation exception, affords the federal courts the power to enjoin a state proceeding where the result of the relitigation would be to destroy the effect of the decree rendered in a United States Court, or would render doubtful the rights of the parties in respect to the effectiveness of such judgment or decree. *Berman v. Denver Tramway Corp.*, 197 F.2d 946 (10th Cir. 1952). Ford's argument is that the final judgment of the district court in the antitrust action required that the Owosso battery plant be divested "in going, viable, and operating condition". Ford maintains that if it had not secured Globe's agreement to continue Ford's high benefits to the salaried employees of the battery plant, those employees would have resigned their positions to seek work elsewhere and consequently the battery plant would have been deprived of its management. Thus the plant would not have been in a viable condition at the time of divestiture. To subject Ford to the claims of its former employees in state court, Ford claims, is to accord the state court judicial review of Ford's performance of the divestiture. "In a nutshell, the subject matter of their state court suit is the claim that Ford should have done the very thing that would have prevented transfer of an operating plant to Globe." (Ford's brief at p. 31) Thus Ford's contention is that the question of separation pay allowance was in effect preempted by Ford's efforts to comply with the antitrust decree.

The district court recognized that it had retained jurisdiction for some purposes in the prior antitrust case; however, that fact alone was not dispositive of the motion for injunctive relief:

"The issues raised in the state court were not raised or litigated in the anti-trust suit, hence there is no relitigation problem. The state action is based on a state cause of action. It is true, as it was in *Oklahoma v. Blank-enship*, 447 F.2d 687 (10th Cir. 1971), *cert denied*, 405 U.S. 918, [92 S.Ct. 942, 30 L.Ed.2d 787] that had there been no federal judgment there would, most probably have been no state suit for breach of contract. However, this court does not believe that the state suit interfered with its 'consideration or disposition of a case as to seriously impair (its) flexibility and authority to decide that case'. *Atlantic Coast Line*, 398 U.S. at 295, [90 S.Ct. 1739]."

We agree. At no time did the antitrust litigation endeavor to determine the specific contractual rights of the salaried employees of Ford at the Owosso plant. While Ford's subsequent negotiations to secure higher employee benefits at Globe, including a separation pay allowance, may have been conceived by Ford to have been part of its obligation to transfer the battery plant in going, viable, and operating condition, the record nowhere shows that such a course of action was compelled by the Department of Justice as a condition of the sale. Nor is there any showing or attempt to show that a causal connection exists between the requirement of viability and the need to augment Globe's scheme of benefits. There is no indication in the record of how many employees would probably resign if they suffered a decrease in employee benefits, whether such employees are important in maintaining the viability of the plant, or whether such employees are difficult to replace. Moreover, it is clear that the salaried employees are not attempting to negate the effect of any antitrust decree. They are not contesting that their employee benefits at Globe are inadequate on the ground that Ford failed to comply with the antitrust decree by providing insufficient consideration to Globe to continue the high Ford benefits. Rather the employees are alleging on a contractual ground that they are entitled to separation pay. To conclude that a federal court has injunctive power to enjoin a state court proceeding whenever the state suit is tangentially related to the prior federal judgment would unduly expand the Congressional exceptions to

the anti-injunction statute. As Justice Black observed in *Atlantic Coast Line R. R. v. Engineers*, 398 U.S. 281, 287, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970):

> "Moreover since the statutory prohibition against such injunctions in part rests on the fundamental constitutional independence of the States and their courts, the exceptions should not be enlarged by loose statutory construction. Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately this Court."

## SECTION II

## ATTORNEY FEES

■ The district court awarded $2,500 as reasonable attorney fees upon application of respondents who alleged that Ford's application for injunctive relief was a substitute for a removal petition and was filed for purposes of harassment. The district court, noting that it was not expressly relying on the grounds advanced by respondents, ordered payment of the attorney fees on the basis of its equitable power as described in *Smoot v. Fox*, 353 F.2d 830, 832 (6th Cir., 1965), *cert. denied*, 384 U.S. 909, 86 S.Ct. 1342, 16 L.Ed.2d 361 (1966). There the court stated that "the allowance of [attorney fees] is within the discretion of the District Court in equity cases where exceptional circumstances call for their allowance in order to do justice between the parties". The district court invoked its equitable powers on the determination that Ford's motion for an injunction, although not frivolous, was unsubstantial and had little merit.[4] However, such a finding is insufficient to support an award of attorney fees. This is not a situation in which there has been a willful disobedience of a court order, nor is

there any showing or finding that Ford "acted in bad faith, vexatiously, wantonly, or for oppressive reasons". *F. D. Rich Co. v. Industrial Lumber Co.*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974). See also, *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

Therefore, so much of the district court order of July 23, 1974 as awards attorney fees to the attorneys for respondents must be vacated and set aside.

Affirmed in part, reversed in part.

Costs to appellees.

---

4. From the court's bench opinion, rendered July 22, 1974:

> "Moreover, given the anti-injunction statute, the court cannot say that Ford's motion rested on a substantial basis. I won't go so far as to say the motion was frivolous, but certainly it was not substantial. I think the motion had very little merit."