**DAILY MIRROR, INC.,**
Plaintiff-Appellant,

v.

**NEW YORK NEWS, INC., et al.,**
Defendants-Appellees.

No. 555, Docket 75-7450.

United States Court of Appeals,
Second Circuit.

Argued Feb. 19, 1976.

Decided April 1, 1976.

Robert W. Farrell, New York City, for plaintiff-appellant.

Mark D. Geraghty, New York City (Townley, Updike, Carter & Rodgers, Frederick D. Berkon, New York City, of counsel), for defendant-appellee New York News, Inc.

Barrett G. Kreisberg, White Plains, for defendant-appellee Harry Garfinkle.

Roy M. Cohn, New York City (Saxe, Bacon & Bolan, P. C., New York City, of counsel), for defendants-appellees American News Company, Inc., Union News Company, Inc. and Ancorp., Inc.

Before FEINBERG, OAKES and VAN GRAAFEILAND, Circuit Judges.

PER CURIAM:

On January 4, 1971, plaintiff corporation commenced publication of a tabloid newspaper, the *Daily Mirror*, designed to compete with the *Daily News*. Almost from its inception, the *Mirror* encountered difficulties in distributing its papers to newsstands.[1] Accordingly, in March 1971, plaintiff filed suit in the United States District Court for the Southern District of New York against the *News*, three companies engaged in the distribution of newspapers and Harry Garfinkle, a principal of these companies, alleging a conspiracy to drive plaintiff out of business by impeding the distribution of its newspaper. The complaint charged the defendants with violations of Sections 1 and 2 of the Sherman Antitrust Act,[2] the state antitrust laws and common law, and demanded ninety million dollars in damages.

Although defendants answered the complaint and served interrogatories in April 1971, plaintiff made no effort to press its lawsuit. It was not until two years later,

when it was faced with the trial judge's threat to dismiss the action for failure to prosecute, that plaintiff finally responded to these interrogatories.

In March 1975, following another two years of markedly little progress, this action was reassigned to Judge Frankel under the Southern District's Plan for the Reallocation and Disposition of Three-Year Old Civil Cases. In accordance with the Plan, a pre-trial conference was held on March 26, and a trial date of June 9, 1975 was set. During the course of this conference, defendants sought permission to move for summary judgment. Although Judge Frankel felt that antitrust cases were among the least likely candidates for summary adjudication, he consented to hear the motion and set a schedule for submission, requiring moving papers by May 5 and answering papers by May 27. Defendants' motion papers were timely submitted.

On May 29, in response to an inquiry from Judge Frankel's chambers, plaintiff's counsel stated that he had decided not to file any answering papers but that, instead, he was filing an affidavit seeking Judge Frankel's withdrawal from the case because of his "bias and prejudice". On June 2, Judge Frankel wrote the parties advising them that he was seriously considering granting summary judgment "against the defaulting plaintiff" although he planned to give full attention to its recusal motion.

On June 9, 1975, Judge Frankel issued an opinion denying the recusal motion, granting summary judgment for the defendant and, in the alternative, dismissing plaintiff's suit for failure to prosecute. No notice of appeal was filed from this decision. Instead, plaintiff moved to vacate pursuant to Fed.R.Civ.P. 60(b).[3] On July 3, this motion was denied without opinion. On July 29, plaintiff filed a notice of appeal, listing the July 3 decision alone as the subject of

1. The *Mirror* finally ceased operations on March 1, 1972.

2. 15 U.S.C. §§ 1 and 2.

3. At the same time or shortly thereafter, plaintiff submitted papers in opposition to the summary judgment motion and an additional affidavit seeking Judge Frankel's recusal. In a June 23 order Judge Frankel reaffirmed his denial of the motion seeking his withdrawal.

its appeal. Although some three months later plaintiff sought to amend its notice of appeal to encompass the June 9 decision as well, the inefficacy of this procedure is apparent.

While a mistake in designating the judgment appealed from is not invariably fatal so long as the intent to appeal from a specific judgment can be fairly inferred, *Foman v. Davis*, 371 U.S. 178, 181–82, 83 S.Ct. 227, 229–30, 9 L.Ed.2d 222, 225 (1962); *Terkildsen v. Waters*, 481 F.2d 201, 206 (2d Cir. 1973), plaintiff's noncompliance with Fed.R.App.P. 4(a) prevents it from benefiting from this liberal standard. A motion for relief under Rule 60(b) does not terminate the running of the time for appeal set forth in Rule 4(a), *Pulliam v. Pulliam*, 156 U.S.App.D.C. 25, 478 F.2d 935, 937 n.6 (1973); 9 J. Moore, Federal Practice ¶ 204.12[1] (2d ed. 1973).[4] Consequently the July 29 notice of appeal was not timely filed with respect to the June 9 decision. Indeed, plaintiff's counsel conceded at oral argument that only Judge Frankel's denial of the 60(b) motion was properly before us for appellate review.

An order denying relief under Rule 60(b) is an appealable order, but the appeal brings up only the correctness of the order itself. *Hines v. Seaboard Air Line R.R. Co.*, 341 F.2d 229 (2d Cir. 1965); *Wagner v. United States*, 316 F.2d 871 (2d Cir.

1963). It does not permit the appellant to attack the underlying judgment for error that could have been complained of on direct appeal. *Sampson v. Radio Corp. of America*, 434 F.2d 315, 317 (2d Cir. 1970); 9 J. Moore, Federal Practice, *supra*, ¶ 204.-12[1]. Moreover, the denial of a motion to vacate will be reversed only upon a clear showing of an abuse of discretion, *Sampson v. Radio Corp. of America, supra; Hines v. Seaboard Air Line R.R. Co., supra; Wagner v. United States, supra*, and plaintiff has utterly failed to make such a showing.

Plaintiff's counsel knew a full week prior to the June 9 decision that the trial judge was seriously considering granting defendants' motion for summary judgment as a consequence of his failure to respond thereto. Nonetheless, he failed to take any action to remedy the situation.[5] It was only after Judge Frankel had issued his opinion and order that plaintiff sought to submit any responding papers. In the face of such dilatory conduct in a four year old lawsuit, Judge Frankel's refusal to vacate his prior decision cannot be considered an abuse of discretion.

Affirmed.

---

4. While there may be cases in which a Rule 60(b) motion made within ten days after entry of judgment may be treated as a motion under Rule 59(e), which does terminate the running of time to appeal, see 9 Moore, Federal Practice ¶ 204.12[1], at 953 & n.11; *cf. Vine v. Beneficial Finance Co.*, 374 F.2d 627, 631–32 (2d Cir.), *cert. denied*, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967), such treatment is at most discretionary and under the circumstances herein would be inappropriate. Although plaintiff's initial motion papers were filed within ten days of Judge Frankel's decision, those papers on their face indicated that they did not constitute the complete motion, and that further affidavits would be forthcoming. Those affidavits, the first to deal with the merits of the summary judgment, were not filed until June 27. Under these circumstances, and given plaintiff's failure to include the original judgment of June 9 in his notice of appeal, to treat what plaintiff called a 60(b) motion as a

59(e) motion, so as to extend the time to appeal from the original judgment, and then to construe a notice of appeal which does not mention that judgment as an appeal from it, would be to carry procedural leniency to an extreme.

5. Plaintiff's claim that the trial judge was required to grant him additional time to respond to the summary judgment motion after he had acted on the recusal application instead of deciding both matters simultaneously is without merit. 28 U.S.C. § 144 necessitates only that a judge suspend further proceedings in an action where a "sufficient" affidavit has been filed to mandate recusal. This was not the situation below. Plaintiff's affidavit wholly failed to establish a personal bias derived from an extrajudicial source. *See United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778, 793 (1966); *Wolfson v. Palmieri*, 396 F.2d 121, 124 (2d Cir. 1968).