**Marlin BROWN, Plaintiff-Appellee,**

v.

**Jon D. McCORMICK and Lyda N. McCormick, his wife, Defendants-Appellants,**

**and**

**Split Rock Ranch, Inc., Defendant.**

**No. 77–1870.**

United States Court of Appeals, Tenth Circuit.

Argued July 16, 1979.

Decided Oct. 17, 1979.

Charles D. McAtee, of Eidson, Lewis, Porter & Haynes, Topeka, Kan. (K. Gary Sebelius, Topeka, Kan., with him, on brief), for defendants-appellants.

John R. Hamilton, of Crane, Martin, Claussen, Hamilton & Barry, Topeka, Kan. (Margaret A. Gatewood, Topeka, Kan., with him, on brief), for plaintiff-appellee.

Before SETH, Chief Judge, and BAR-RETT and McKAY, Circuit Judges.

SETH, Chief Judge.

This appeal concerns the validity of a default judgment entered against defendants in 1971, and the propriety of an injunction against defendants under 28 U.S.C. § 2283 from proceeding against the plaintiff in the Arizona courts. The plaintiff, Mr. Marlin Brown, instituted this action in the United States District Court for the District of Kansas through a supplemental complaint filed pursuant to 28 U.S.C. § 2283 to protect his 1971 judgment against the defendants. The defendants responded by a motion for relief from judgment under Fed. R.Civ.P. 60(b)(4). The district court after a three-day hearing denied the 60(b) motion and enjoined the defendants from proceeding with their action in the Arizona state court. This appeal followed.

A brief outline of the sequence of events is necessary. This appeal from the § 2283 injunction and denial of Rule 60(b)(4) relief does not concern the merits of the original lawsuit. The district court repeatedly said as much during the hearing and confined the testimony to the issues raised by the supplemental complaint and motion. Accordingly, we are concerned only with matters relating to the validity of the original default judgment and the issues arising from Rule 60(b)(4) and § 2283.

The genesis of the original lawsuit was a meeting between the parties before us in Council Grove, Kansas. Jon and Lyda McCormick who were Arizona residents were visiting relatives, and during this trip contacted Mr. Marlin Brown for assistance with some problems they were experiencing in Arizona. Mr. Brown was an attorney who had retired from active practice. The McCormicks apparently had overextended themselves on the purchase of the Z-Bar-T ranch in Arizona and needed legal and financial help. An agreement was reached, and Mr. Brown made several trips to Arizona, invested personal funds in the ranch, loaned money to the McCormicks, and attempted to reacquire 100 percent control of the ranch for them. The relationship soured, however, and Mr. Brown filed suit against the McCormicks in the Kansas federal court seeking a declaratory judgment on the agreement and damages for the alleged breach. Jurisdiction was based on diversity of citizenship and the Kansas long-arm statute, K.S.A.1975 Supp. 60–308(b). The McCormicks' attorney subsequently filed an out of time appearance and was granted a 30-day extension to respond. Mr. Brown then amended his complaint to include as a defendant Split Rock Ranch, Inc., a corporation previously formed by the McCormicks and others for the purpose of owning and managing the Z-Bar-T ranch. Split Rock timely filed its answer. The McCormicks, however, failed to meet the extension date. Mr. Brown then filed a notice for default judgment and shortly thereafter the McCormicks' attorney asked for leave to withdraw. This was granted and a second attorney then entered his appearance, was granted an extension, and then filed a general denial. Depositions were scheduled, cancelled due to attorney conflict, rescheduled, and eventually not taken due to the McCormicks' failure to appear. Their second attorney asked to withdraw. The district judge ordered the McCormicks' pleadings stricken as a Fed.R. Civ.P. 37 sanction, and scheduled a default judgment hearing or trial. Following that hearing default judgment was entered against the McCormicks. Nine months had passed since the filing of the original complaint. Of crucial importance is that the McCormicks never appealed and did not seek to set aside the judgment until this action was brought against them.

Approximately three years later, the McCormicks instituted an action in the Arizona state court seeking adjudication, among other things, of the matters raised in the original lawsuit. Marlin Brown unsuccessfully defended on the basis of res judicata. He then returned to the district court and filed the supplemental complaint with which we are here concerned.

Appellants' basic contention below and here is that the default judgment is void.

They raise several issues in support of this argument. They contend the court lacked *in personam* jurisdiction, and also lacked subject matter jurisdiction because the defendant Split Rock, Inc. should have been realigned as a party plaintiff. They contend the Rule 37 sanctions denied them due process of law, and that the default judgment was obtained by fraud on the court. They also urge that the default judgment was in excess of the pleadings and unconstitutionally deprived them of grazing leases included in the order of judgment. The district court made extensive findings with regard to each issue and concluded they were without merit. We must agree because on the basis of the record before us the findings are not clearly erroneous.

Rule 60(b) operates to relieve a party from judgment only upon such terms as are just. It is an extraordinary procedure that permits the court which rendered judgment to grant relief from the judgment upon a showing of good cause within the rule. *See* 6A Moore's Federal Practice ¶ 60.02; 7 Moore's Federal Practice ¶ 60.19. The rule concerns matters outside the issues raised and considered by the court in reaching its judgment. It is clearly *not* a substitute for appeal and must be considered with the obvious need for the finality of judgments. *See Daily Mirror, Inc. v. New York News, Inc.,* 533 F.2d 53 (2d Cir.), *cert. denied,* 429 U.S. 862, 97 S.Ct. 166, 50 L.Ed.2d 140. As to time limits not expressed in the rule, *see Misco Leasing, Inc. v. Vaughn,* 450 F.2d 257 (10th Cir.).

As to the assertion that there was a lack of *in personam* jurisdiction, we find the arguments of appellants unpersuasive. We agree fully with the analysis and the conclusion by the trial court on this issue. The same conclusion must be reached as to the assertions that there was collusion in that the Split Rock corporation answered before it was served, and there had been communication between the attorneys.

As indicated above, the appellants here urge that the default judgment court did not have subject matter jurisdiction because it did not realign the defendant Split Rock Ranch, Inc. as a plaintiff. Appellants urge in their 60(b) motion that the corporation's interest was not adverse to that of plaintiff, and realignment would have destroyed diversity. The pleadings show an allegation of citizenship as to plaintiff and the corporate defendant (and the individual defendants). This was denied by the answer of the McCormicks, as was everything else in the complaint. The answer was a general denial in the very broadest terms. Nevertheless, the trial court thereupon made findings in the default judgment as to diversity. These findings were from what appeared in the complaint and answer and during the course of the default trial. (The corporate defendant did not default.) This, in our view, was a "litigation" of sorts of the issue as to whether the corporation was an adverse party. Of course, there was no motion or any suggestion that the parties be realigned until the proceedings which are the subject of this appeal. In these circumstances the trial judge, in view of the denial of the diversity allegations, considered the proper material. These were the entire diversity facts and the issue was raised, and any realignment issue was necessarily included and determined. Again, it should be pointed out that Split Rock Ranch, Inc. did not default, moved for trial, and went to trial at the same hearing wherein the default judgment was entered.

Rule 60(b) obviously is not a substitute for an appeal and cannot be used for appellate review of matters determined by the trial court on the basis of facts before the court. *See* 1B Moore's Federal Practice ¶ 0.407, ¶ 60.25[3] and ¶ 60.41[1]. There is no indication that anything outside the original record has been advanced as a reason to reconsider the determination originally made. It is obvious that if the judgment is void, it may be attacked in a variety of ways. *See V. T. A., Inc. v. Airco, Inc.,* 597 F.2d 220 (10th Cir.). However, in the situation before us it appears that the motion is sought as an appeal from the original trial court's determination. Thus this challenge by the use of Rule 60(b) is not available to attack the judgment. It is nothing

more than an appeal. In any event, the record clearly shows that as of the time the pleadings were filed, the determination made by the default trial court was correct. The face of the pleadings and other material before the court indicated that the plaintiff and the defendants were adversaries. The trial court from which this appeal was taken found that the plaintiff and defendants were adversary parties, and we agree. The plaintiff and the nonparty Richins brothers who controlled the corporation were obviously at odds with each other and with different interests in the several issues. The corporation had denied on information and belief plaintiff's claim to corporate shares. The default court was entirely correct in its findings. The matter was resolved on the basis of the pleadings and the nature of the suit as expressly held in *Smith v. Sperling*, 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205, and the companion cases of *Swanson v. Traer*, 354 U.S. 114, 77 S.Ct. 1116, 1 L.Ed.2d 1221, and *Carr v. Beverly Hills Corp.*, 354 U.S. 917, 77 S.Ct. 1375, 1 L.Ed.2d 1433.

■ Appellants have advanced other issues on this appeal. They argue the Rule 37 sanctions were arbitrary and in violation of their due process rights. If shown, such action by a court will render a judgment void. *See Arthur Andersen & Co. v. State of Ohio*, 502 F.2d 834 (10th Cir.), *cert. denied*, 419 U.S. 1034, 95 S.Ct. 516, 42 L.Ed.2d 309. However, the sequence of events outlined previously persuade us that the Rule 37 sanctions were not arbitrarily invoked. They were within the court's sound discretion, *Marshall v. Ford Motor Company*, 446 F.2d 712 (10th Cir.), and given the appellants' dilatory tactics we cannot say this discretion was abused. *National Hockey League v. Met. Hockey Club*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747, clearly indicates that we should not disturb such drastic sanctions when appropriately applied as they were here. · Appellants additionally complain that they did not receive proper notice of the default judgment hearing. We doubt that this alleged procedural defect rises to a due process violation in the context of this case, *see Winfield Associ-ates, Inc. v. Stonecipher*, 429 F.2d 1087 (10th Cir.), but, in any event, it is clear that appellants' attorney had notice of the hearing.

■ Appellants' contentions with regard to "fraud on the court" are simply without merit. They allege collusion in the alignment of the parties and misrepresentation by appellee's attorney's statement that appellants received notice of the last scheduled deposition. The district court found otherwise and did not commit error. The allegations simply do not show that appellants were denied an opportunity to present their defense, or that the court was improperly influenced on account of the acts by appellee's attorney. *See Rozier v. Ford Motor Co.*, 573 F.2d 1332 (5th Cir.), *rehearing denied*, 578 F.2d 871 (5th Cir.); *Wilkin v. Sunbeam Corporation*, 466 F.2d 714 (10th Cir.), *cert. denied*, 409 U.S. 1126, 93 S.Ct. 940, 35 L.Ed.2d 258.

■ Appellants argue that the order directing them to transfer thirty-six sections of grazing leases to Split Rock Ranch, Inc. unconstitutionally deprived them of their property, exceeded the relief demanded by appellee's complaint, and violated Rule 54(c). There was no mention of the grazing leases in the complaint, amended complaint, and Split Rock Ranch, Inc.'s answer in the original proceedings. We conclude, however, that their inclusion was not in error.

The district court found that all parties considered the grazing leases to be part of "the ranch," and thus appellants were aware that they would necessarily be included in the final order. The amended complaint sought declaratory judgment that Split Rock Ranch, Inc. was a legal entity and owned the Z-Bar-T ranch. Appellee had alleged that the agreement provided for his acquisition of all the stock which at the time appellants sought his help was held by four brothers from New Mexico and an Arizona attorney who had loaned appellants money. This attorney held fifty percent of the stock as security for his loan. The appellants allegedly told the appellee that if he paid off the loan and received the

stock and acquired the other fifty percent, they would manage the ranch and divide the proceeds from an eventual sale. The appellants represented, of course, that the corporation owned "the ranch." Appellee in his declaratory judgment action therefore sought to estop appellants from denying the existence of the corporation and its ownership of "the ranch."

The district court heard extensive testimony and admitted various documents pertaining to this question. Appellants strenuously argued that the leases were never part of the ranch and introduced transfer applications for the leases that they had signed in blank and left with their attorney who was instructed *not* to transfer the leases to the corporation. The testimony conflicted because appellee and other witnesses maintained the contrary was true. Two factors convince us that the district court did not err in accepting appellee's version.

First, it was apparent to all concerned that the leases were included in the litigation because everyone knew they were due to expire in February 1972, and the lawsuit needed to be resolved before their expiration. Second, the deeds originally executed by appellants to the four brothers who received an undivided one-half interest in the ranch and fifty percent of the stock in return for $25,000, and to the corporation, all refer to the property described in the attached "Exhibit A." "Exhibit A" includes all the grazing leases in question here. There clearly was sufficient evidence to support the court's finding that the Z-Bar-T ranch, referred to in the original complaint, included the grazing leases, and appellants were always aware it included the grazing leases. "The ranch" was the subject of the agreements and the litigation.

We hold that the default judgment is valid.

As indicated previously, appellants instituted an action in the Arizona state court approximately four years after the federal default judgment. The state complaint contained three counts: Count I alleges that Marlin Brown "betrayed his construc-

tive trust and wrongfully obtained and converted to his own use and unfairly holds [the McCormicks'] property" by filing a writ of replevin in the Arizona court (this action was essentially contemporaneous with the original action in federal court); Count II alleges a breach of the agreement by Mr. Brown's failure to return the McCormicks' equity in the ranch; Count III alleges detrimental reliance on Mr. Brown's advice and violation of the attorney-client relationship. Mr. Brown raised the affirmative defenses of res judicata and collateral estoppel by the default judgment. The state trial court rejected these defenses and the Arizona Court of Appeals agreed with no formal explanation. The Arizona Supreme Court denied certiorari.

With this sequence in mind, we turn to the 28 U.S.C. § 2283 injunction. Section 2283, the anti-injunction statute, provides three exceptions to the general principle that a federal court cannot interfere with state court proceedings. It states:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by *Act of Congress,* or where *necessary in aid of its jurisdiction,* or to *protect or effectuate its judgments.*" (Emphasis added.)

The district court concluded that the third "relitigation exception" applied to the case at bar and granted the injunction.

Appellants argue that the district court should have applied the *Younger—Huffman* abstention standards for staying a state court proceeding. *See Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482; *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669. Furthermore, they say, by doing so the district court would have to conclude that the injunction is improper. They also contend that Count I is unrelated to the original action and should not have been included in the injunction.

The historical legacy and the prevailing policy against federal court intervention in state court proceedings are well

documented. *See Atlantic C. L. R. Co. v. Engineers,* 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234; *United States v. Ford Motor Company,* 522 F.2d 962 (6th Cir.); *International Ass'n of Mach. & Aero. Wkrs. v. Nix,* 512 F.2d 125 (5th Cir.); *State of Oklahoma ex rel. Wilson v. Blankenship,* 447 F.2d 687 (10th Cir.), *cert. denied,* 405 U.S. 918, 92 S.Ct. 942, 30 L.Ed.2d 787. The anti-injunction statute permits a federal court to use its equitable powers to enjoin a state proceeding where at least one of the specific exceptions applies. Analysis by a federal court necessarily includes general equitable principles for issuing an injunction. Thus, in *United States v. Ford Motor Company,* 522 F.2d 962 (6th Cir.), the court held that the relitigation exception could not be invoked because the petitioner had not used the appellate process to raise his res judicata defense. An injunction was clearly premature under general equitable principles.

■ The situation here is obviously different. We recognized as long ago as *Berman v. Denver Tramway Corp.,* 197 F.2d 946 (10th Cir.), that an injunction is proper for actions relitigating matters litigated and adjudicated by a valid decree duly entered. Res judicata and collateral estoppel operate to preclude relitigation under § 2283. *Samuel C. Ennis & Co., Inc. v. Woodmar Realty Co.,* 542 F.2d 45 (7th Cir.). We do not believe the *Younger—Huffman* line of reasoning is applicable here. Neither case involved res judicata principles or the situation where a party armed with his valid federal judgment exhausted state appellate review. *Cf. Lamb Enterprises, Inc. v. Kiroff,* 549 F.2d 1052 (6th Cir.), *cert. denied,* 431 U.S. 968, 97 S.Ct. 2927, 53 L.Ed.2d 1064; *United States v. Ford Motor Company,* 522 F.2d 962 (6th Cir.).

■ The district court decided that Counts II and III of appellants' complaint sought to relitigate the issues already determined by the default judgment. We must agree. The counts clearly seek to establish that Mr. Brown breached the agreement. The issues are res judicata and must be enjoined under § 2283.

■ The district court also included Count I in the injunction on the basis that it is a compulsory counterclaim the appellants failed to raise in the original suit. The pleadings and testimony indicate that the personal property Mr. Brown received in return for advances to appellants were all part of the agreement. It arose most certainly from the underlying transaction which prompted Mr. Brown's participation. Under Fed.R.Civ.P. 13, this claim is compulsory. There are, of course, exceptions to this rule but, contrary to appellants' position, the "pending action" exception does not apply. *See* 3 Moore's Federal Practice ¶ 13.14[2]. Mr. Brown filed a replevin action in the Arizona court after he filed his original lawsuit. He sought to obtain the personal property held by appellants. It is clear that the exception applies only if the counterclaim was the subject of a pending action when the federal suit was filed. We therefore conclude that Count I was a compulsory counterclaim and appellants cannot bring it in their subsequent action. *See Pipeliners Local Union No. 798, Tulsa, Okl. v. Ellerd,* 503 F.2d 1193 (10th Cir.).

Appellants' remaining contentions on appeal have no merit. The evidentiary problems complained of do not indicate any abuse of discretion by the district court. Furthermore, appellants' contentions that the Arizona suit should be permitted to proceed against Mr. Brown's wife are unsupported. Their claim for relief in the Arizona court was directed to Marlin Brown and their agreement was with him.

The judgment is AFFIRMED.

McKAY, Circuit Judge, concurring:

The majority's characterization of appellants' due process claims, at 414 fails to acknowledge the true nature and seriousness of the claims. On appeal, appellants did *not* primarily claim "that they did not receive proper notice of the default judgment hearing."[1] Rather, their complaint is

---

1. The district court also characterized the appellants' claim in this way. Record, vol. 1, at

106. We are not, of course, bound by its characterization.

that the initial trial court excluded them entirely from the default judgment hearing—a hearing at which testimony was received to set the boundaries of the applicable remedies. This claim thus is tied directly to the assertion that the ordered remedy exceeded the complaint's ad damnum, in violation of Fed.R.Civ.P. 54(c).

The chronology is this: The depositions of the appellants were scheduled for November 2, 1971, and appellants' attorney, Crockett, so informed them by letter. Appellants, who said they had misread the date as November 12, did not appear, although Crockett did. Because of this nonappearance and other alleged dilatory actions, Brown's attorneys moved to strike the McCormicks' pleading as a sanction under Fed.R.Civ.P. 37. At a hearing on this motion on November 17, Judge Templar granted the motion and expostulated: "They [the McCormicks] have had an ample opportunity to appear in this Court time after time and they have always been too busy. This Court is too busy to hear them now." Record, vol. 2, at 22. A further default hearing was necessary because, as Brown's attorney noted, "Well, it's a declaratory judgment, Your Honor, and I think I am going to have to put Mr. Brown on to have any kind of record *and introduce the leases* and so forth." Record, vol. 2, at 22 (emphasis added). The court then scheduled the default hearing for November 22 and, in response to a question from Crockett as to "what participation they [the McCormicks] can have in your hearing," the following exchange occurred:

The Court: They won't have any.

Mr. Crockett: They have no right to cross examine Mr. Brown or anything?

The Court: No. They have had their opportunity for a day in Court and forfeited it in my opinion.

Mr. Crockett: Thank you.

Record, vol. 2, at 24. Thus, as the majority notes, "it is clear that appellants' attorney had notice of the hearing." It is also clear that the McCormicks, by their attorney, had notice that the leases would be at issue in the default judgment hearing.[2] But the real issue remains: Does total exclusion from a default judgment hearing constitute a due process violation?

The trial court in the instant action refers, at different points in its opinion, to both the November 17 and November 24 hearings as default judgment hearings. Record, vol. 1, at 85, 106. Although "[t]he provision for striking pleadings . . . adds little if anything to the power of the court to dismiss the action or enter judgment by default," 4A *Moore's Federal Practice* ¶ 37.03[2.–5], at 37–71 (2d ed. 1978), when a "two-step procedure" is adopted, we should not ignore appropriate procedural requirements. Therefore, participation at the first hearing should not, by itself, be sufficient to constitute opportunity for participation at the default hearing.

Although I believe the majority inadequately characterizes the issue, I nonetheless, on these facts, concur in the result. I am unwilling to find the earlier judgment void after lawyer Crockett had neither objected on the spot to Judge Templar's actions nor appealed the grant of default judgment. For most purposes, we must consider the lawyer to be the client's agent. Unlike the typical default judgment for nonappearance, the McCormicks had been involved in this action, albeit sporadically, from the beginning. Because of Crockett's testimony in the instant action—that the issue of grazing rights was raised at every court appearance between June 24 and November 17, Record, vol. 4, at 299—and because of other evidence on the point, the court's resolution of the Rule 54(c) question is acceptable.

2. The McCormicks do claim on appeal that they had "no notice prior to the Default Judgment Hearing of plaintiff's intent to have the Trial Court determine who was entitled to hold certain mining claims, grazing leases and permits." Brief of Appellants at 62. Because of Crockett's participation in the November 17 hearing, this claim is without merit.