LAW OFFICES OF JERRIS LEONARD, P.C., et al., Plaintiffs,

v.

MIDEAST SYSTEMS, LTD., et al., Defendants.

Civ. A. No. 85–1610.

United States District Court, District of Columbia.

June 27, 1986.

J. Stuart Lemle, Washington, D.C., for plaintiffs.

Solomon Abrahams, Hartsdale, N.Y., pro hac vice for defendants.

## MEMORANDUM

GASCH, District Judge.

### I. FACTS

This motion arises in the context of a suit entitled *Law Offices of Jerris Leonard, et al.*, ("*Jerris Leonard*"), an action filed in this Court by four plaintiff attorneys seeking to recover unpaid legal fees. The original defendants were Mideast Systems Ltd. and an entity known as "Mideast Systems and China Civil Construction—Saipan Joint Venture, Inc." ("MS/CCC"). The attorneys were retained to represent MS/CCC in a government contracts dispute with the Department of the Interior. MS/CCC failed to enter an appearance in the *Jerris Leonard* matter, and on August 2, 1985, the Court signed an order granting a default judgment against it. The case continued against Mideast Systems, the co-owner of MS/CCC. In December, 1985, the Court signed an order permitting plaintiffs to amend the complaint to add Dominick and Etrusca Cosentino, the officers and owners of Mideast and MS/CCC, as individual defendants. In April 1986, the Court denied the individual defendants' motion to dismiss for want of personal jurisdiction and continued the trial until July 16, 1986.

On June 12, 1986, five weeks before trial, Solomon Abrahams, the attorney who represents the individual defendants in the *Jerris Leonard* matter before this Court, filed a legal malpractice claim in New York state court on behalf of MS/CCC. *See* Att. 1, Plaintiffs' Motion for Declaratory Judgment. The plaintiffs in the *Jerris Leonard* case were named as defendants in that case, and the legal malpractice was alleged to have occurred in connection with the government contracts litigation that is the subject of the *Jerris Leonard* suit for un-

paid legal fees. Specifically, the complaint filed in New York alleges, *inter alia*, that the Department of the Interior offered to settle the government contracts litigation for $100,000, but on the advice of one plaintiff lawyer, Don M. Bosco, MS/CCC declined to accept settlement. That case was subsequently decided in favor of the government on its motion for summary judgment.[1] MS/CCC incorrectly states in its New York complaint that it had paid the lawyers for their services when in fact this Court's judgment against it for $72,000 remains outstanding. MS/CCC seeks to recover $1.8 million in compensatory damages and $3 million in punitive damages in the New York legal malpractice suit.

Plaintiff lawyers in the *Jerris Leonard* matter have now moved the Court for declaratory judgment that the legal malpractice claim against them was a compulsory counterclaim in the suit here under Fed.R. Civ.P. 13(a). In addition, because MS/CCC chose not to appear and to allow a default judgment to be entered against it, plaintiff lawyers argue that MS/CCC now is barred from raising the counterclaim. *See Mc-Donald's Corp. v. Levine*, 108 Ill.App.3d 732, 64 Ill.Dec. 224, 234–35, 439 N.E.2d 475, 485–86 (1982), and cases cited therein.[2]

For the reasons stated below, the Court holds that the legal malpractice claim is a compulsory counterclaim under Rule 13(a), and that MS/CCC was required to raise it when its answer was due in the *Jerris Leonard* suit.

### II. DISCUSSION

█ Rule 13(a) states in relevant part: A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any

---

1. This result was affirmed on appeal for other reasons, *Mideast Systems and China Civil Construction etc. v. Hodel*, 792 F.2d 1172 (D.C.Cir. 1986).

2. They further seek sanctions against Mr. Abrahams and to have this Court revoke its grant allowing him to appear here *pro hac vice*. As Mr. Abrahams has informed the Court of his intent to withdraw as counsel for the Cosentinos

in the *Jerris Leonard* case, the latter request is moot. Because trial is imminent in this matter, and because plaintiff lawyers have to file a response to the New York complaint, the Court upon the agreement of the parties has determined to handle the motion for declaratory judgment expeditiously and without oral argument. The Court reserves action on the motion for sanctions.

opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

"The purpose of the rule is 'to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters'." *Columbia Plaza Corp. v. Security Natl. Bank.*, 525 F.2d 620, 625 (D.C.Cir.1975), *citing Southern Construction Co. v. United States ex rel. Pickard*, 371 U.S. 57, 60, 83 S.Ct. 108, 110, 9 L.Ed.2d 31 (1962). The Supreme Court has given the rule's operative terms, "transaction or occurrence", broad meaning: They "may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their *logical relationship.*" *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926) (emphasis added). Where the factual claims in two actions indicate that evidence offered in both claims is likely to be substantially identical, the claim should be adjudicated in a single forum. *Columbia Plaza, supra*, 525 F.2d at 625; *Pipeliners Local Union No. 798 etc. v. Ellerd*, 503 F.2d 1193, 1198 (10th Cir.1974).

Under this standard, it is hard to imagine a clearer compulsory counterclaim to a complaint for failure to pay legal fees than a legal malpractice claim stemming from the handling of the litigation for which fees are sought. The party raising the malpractice claim is in effect asserting a defense of failure to perform to the lawyer's claim for breach of contract. The testimony and documents necessary to litigate both claims

are likely to be substantially the same.[3] Several courts have held that a tort action stemming out of the same transaction as a breach of contract claim is a compulsory counterclaim to the contract action. *Crutcher v. Aetna Life Insurance Co.*, 746 F.2d 1076, 1080 (5th Cir.1984) (suit for breach of fiduciary duty and tortious interference is compulsory counterclaim to action to recover on guaranty); *Cleckner v. Republic Van & Storage Co.*, 556 F.2d 766 (5th Cir.1977) (negligence claim for damage to goods is compulsory counterclaim to suit by movers for failure to pay); *In re McCoy*, 373 F.Supp. 870, 873 (D.Tex.1974) (medical malpractice claim is compulsory counterclaim to suit for unpaid doctor's fees); *Black v. Dillon*, 213 Cal.App.2d 295, 28 Cal.Rptr. 678, 679 (Cal.App. 3rd D.1963) (same). In the case at bar, the legal malpractice claim has a very close logical relationship to the claim for legal fees owed for the same litigation; thus it is a compulsory counterclaim under Rule 13(a).

If a party fails to plead a compulsory counterclaim while litigation is pending, it is forever barred from raising the claim. *Crutcher, supra*, 746 F.2d at 1080; *Brown v. McCormick*, 608 F.2d 410, 416 (10th Cir.1979); *Pipeliners Local, supra*, 503 F.2d at 1198; 3 Moore's Federal Practice ¶ 13.12[1] (1983) and cases cited therein. This is true even if the party defaulted, as did MS/CCC. *Firemen's Insurance Co. v. L.P. Steuart & Bro., Inc.*, 158 A.2d 675, 677 (D.C.Mun.App.1960). Defendants who have a valid default judgment entered against them may be barred from raising compulsory counterclaims in subsequent state court litigation. *Brown, supra*, 608 F.2d at 416.[4]

---

3. In fact, in his brief, Mr. Abrahams states he discovered the facts underlying the alleged malpractice claim while conducting discovery in the *Jerris Leonard* case. *See* Response to Plaintiffs' Motion, p. 2.

4. The facts in *Brown* are relevant here. In *Brown*, a lawyer agreed to perform legal work and to join in an investment venture with parties named McCormick. The deal soured and the lawyer sued in federal court for damages for breach of contract. Default judgment was even-

tually entered against the McCormicks. Three years later the McCormicks sued the lawyer in state court raising essentially the same issues. The lawyer returned to federal court and obtained an injunction on the basis of Rule 13(a). The federal court held that the McCormicks' state claim for wrongful conversion against the lawyer was a compulsory counterclaim growing out of the lawyer's breach of contract suit; because the McCormicks failed to raise the claim and defaulted instead, that default was held to

Mr. Abrahams argues that Rule 13(a) is wholly inapplicable to MS/CCC because MS/CCC never served a pleading in the *Jerris Leonard* case, and the rule speaks of "pleadings". If this is another way of arguing that Rule 13(a) is inapplicable where a party has a default judgment entered against it, *Brown* holds otherwise. According to Mr. Abrahams, "Rule 13A (sic) is only applicable in actions where a pleading is served and is not applicable to a party who elected not to appear in an action." Response, p. 5. This is simply not the law. The fact that a party declines to appear does not prevent the default judgment from being set up as res judicata against it, barring subsequent counterclaims. *MacDonald v. Krause*, 77 Nev. 312, 362 P.2d 724, 729 (1961), and cases cited therein; *Firemen's Insurance, supra*, 158 A.2d at 677. The comments to the rule also make it clear that the rule was designed to prevent just such a scenario as Mr. Abrahams contends it permits:

> [T]he subdivision ... insures against the undesirable possibility ... whereby a party having a claim which would be the subject of a compulsory counterclaim could avoid stating it as such by bringing an independent action in another court after the commencement of the federal action. ...

Rule 13(a), 1946 Amendment, Note to Subdivision (a).[5]

■ Rule 13(a) does not bar a party from later raising a compulsory counterclaim that matured after the original pleading. *See* Rule 13(e); *Chapin & Chapin v. McShane Contracting Co.*, 374 F.Supp. 1191, 1197 (D.Pa.1974). Mr. Abrahams appears to argue that MS/CCC's claim for legal malpractice did not accrue until he, as

the entity's new lawyer, discovered facts which would be the basis for such a claim in the course of discovery in the *Jerris Leonard* matter. *See* Response, p. 7.

■ Perhaps Mr. Abrahams is attempting to invoke the "discovery rule," which is that a cause of action for legal malpractice does not accrue "until the client knows or should know all material facts essential to show the elements of that cause of action." *Byers v. Burleson*, 713 F.2d 856, 860 (D.C. Cir.1983), *citing Weisburg v. Williams, Connolly & Califano*, 390 A.2d 992, 996 n. 8 (D.C.App.1978). To state a claim for legal malpractice, "[a] party must prove: (1) that there is an attorney-client relationship; (2) that the attorney neglected a reasonable duty; and (3) that the attorney's negligence resulted in and was the proximate cause of a loss to the client." *Chase v. Gilbert*, 499 A.2d 1203, 1211 (D.C.App. 1985). It is necessary to examine the allegations pleaded in the legal malpractice complaint to ascertain when the claim accrued. *See, e.g., Swan v. Matthews*, 555 F.Supp. 495 (D.Mont.1982). Examining the complaint filed in New York, the Court ascertains that all the facts alleged concerning the lawyers' representation of MS/CCC in the district court litigation were known or should have been known to MS/CCC at the time the *Jerris Leonard* suit was filed.

There can be no question that MS/CCC was aware of the first and last requirements, namely, that it was in an attorney-client relationship with the lawyers and that it was injured in the course of their representation. MS/CCC had reason to know that the lawyers may have been negligent by virtue of the alleged fact that they counseled against acceptance of the

be res judicata on the compulsory counterclaim. *Brown, supra*, 608 F.2d at 416.

**5.** Mr. Abrahams also makes the novel argument that because the Declaratory Judgment Act, 28 U.S.C. § 2201, states that a Court may enter a declaratory judgment "upon the filing of an appropriate pleading," and because MS/CCC filed no pleadings in the *Jerris Leonard* case, this Court is without jurisdiction to hear this motion. Obviously, the "pleading" referred to in the statute is the pleading filed by the party

seeking declaratory judgment. Mr. Abrahams also fails to properly read or research the record in this case, for he states that this Court permitted plaintiff lawyers to amend their complaint in *Jerris Leonard* to add Mideast Systems and the Cosentinos as defendants "without a court order". Response, p. 1. Mideast was a defendant named in the original complaint filed May 17, 1985; the Cosentinos were added by Court order dated December 10, 1985.

settlement and later lost the case, and it had reason to know of the reasons why the district court entered summary judgment against it. In fact, Mr. Abrahams' response states that Mr. Cosentino, as president of MS/CCC, constantly complained to him that the lawyers had told Mr. Cosentino MS/CCC had an excellent claim in the government contracts litigation, but that the claim was nonetheless dismissed.

■ When MS/CCC was sued for nonpayment of legal fees in the *Jerris Leonard* matter, it was put on notice that the reasonableness of the fees charged would be an issue. In light of Mr. Cosentino's suspicions about the quality of the legal services rendered, MS/CCC should have discovered then that the lawyers' work might have been actionably negligent. Instead, MS/CCC chose not to appear and suffer a default judgment. Thus, the Court finds that MS/CCC's legal malpractice claim, as framed in the New York complaint, accrued at the earliest when summary judgment was entered against it or at the latest, when an answer was due from MS/CCC in the *Jerris Leonard* litigation. By that time, MS/CCC should have known, or should have diligently taken steps to discover, the existence of a legal malpractice claim.

Furthermore, Mr. Abrahams cites no case, and the Court knows of none, that holds that the discovery rule applies to the date when a plaintiff-client's new attorney discovers the facts underlying a malpractice claim, as opposed to the plaintiff-client itself. *Byers* and *Weisberg* state the opposite; it is the client's knowledge that is relevant. *Byers, supra,* 713 F.2d at 860; *Weisberg, supra,* 390 A.2d at 996 n. 8. *Cf. Lofton v. General Motors, Inc.,* 694 F.2d 514, 518 (7th Cir.1982).

## III. CONCLUSION

In sum, the legal malpractice claim as framed by MS/CCC in the New York complaint is a compulsory counterclaim in the *Jerris Leonard* suit. As MS/CCC knew or should have known of the existence of a potential claim at the time its answer was due in this Court, but instead chose to suffer default judgment, the Court finds

that MS/CCC is now barred by Rule 13(a) from raising the claim, and it will so declare. The Court will take plaintiffs' remaining motion concerning sanctions under advisement.

## ORDER

Upon consideration of plaintiffs' motion for a declaratory judgment and for sanctions, defendants' response thereto, and the entire record in this proceeding, and for the reasons stated in the accompanying memorandum, it is by the Court this 27th day of June, 1986,

ORDERED that a declaratory judgment be entered in favor of plaintiffs and against defendants holding that the lawsuit initiated by defendant Mideast Systems and China Civil Construction Saipan Joint Venture, Inc. ("MS/CCC") against plaintiffs in this action in the Supreme Court of the State of New York on June 12, 1986, should have been brought as a compulsory counterclaim in this action, but now is forever barred under Rule 13(a) of the Federal Rules of Civil Procedure from being raised in this case or in any other legal action because final judgment on this matter was entered against MS/CCC and in favor of plaintiffs by this Court on August 2, 1985. The Court reserves ruling on plaintiffs' motion for sanctions.