## SAFEWAY TRAILS, Inc. v. ALLENTOWN AND READING TRANSIT CO.

No. 6136.

United States Court of Appeals
Fourth Circuit

Argued Nov. 8, 1950.

Decided Dec. 20, 1950.

Theodore Sherbow, Baltimore, Md. (James J. Lindsay, Jr., Baltimore, Md., on brief) for appellant.

Foster H. Fanseen, Baltimore, Md. (Ginsberg & Ginsberg, Baltimore, Md. on brief) for appellee.

Before PARKER, Chief Judge and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

On July 29, 1946, Safeway Trails, Inc., (hereinafter referred to as Safeway) and Allentown and Reading Transit Company, a corporation, (referred to hereinafter as Allentown) were engaged in the interstate operation of buses under authority of the Interstate Commerce Commission. Safeway frequently chartered buses from Allentown, and on this date, Thomas St. Jacques, an employee bus driver of Safeway, chartered a bus from Allentown in Reading, Pennsylvania, to go south to Oxford, Pennsylvania, Baltimore, Maryland, or Washington, D. C. The chartered bus was driven by Earl Muth, an employee of Allentown. On the bus were passengers holding Safeway tickets. The Allentown bus became involved in a head-on collision on U. S. Route No. 1 north of Baltimore, Maryland, with an automobile driven by Robert A. Jackson, who was slightly injured. A passenger in Jackson's car, Paul Dozier, was severely injured.

Suits were filed by Jackson and Dozier against both bus companies and tried in the Baltimore City Court. The jury disagreed and was discharged. Thereafter,

Safeway, under protest, by way of settlement, after having asked Allentown to assume the responsibility of amicable adjustment, made an involuntary payment to Paul Dozier of $3,750.00. Allentown did likewise.

On November 14, 1949, Safeway filed a complaint, No. 4782, Civil Docket against Allentown, in the United States District Court for the District of Maryland. The first count of the complaint rested on the theory that the plaintiff, having been exposed to an action at law because of the negligent activities of the defendant, was forced to pay a sum of money to Paul Dozier and incur various expenses, and, therefore, was entitled to be indemnified for its expenditures. The second count alleged the existence of an agreement whereby the defendant was to be responsible for any claims made by third persons growing out of Safeway's chartering buses from Allentown.

On December 7, 1949, Allentown filed an answer to the complaint. On December 29, 1949, a complaint was filed by Allentown, No. 4840, Civil Docket, against Safeway, using almost the exact language of Safeway's complaint. On January 16, 1950, Safeway filed a motion to dismiss the complaint in No. 4840 because of Allentown's failure to comply with the compulsory counterclaim Rule 13(a), Federal Rules of Civil Procedure, 28 U.S.C.A.

On January 24, 1950, Allentown's counsel, without any notice to counsel for Safeway, obtained leave of court to file an amended answer and counterclaim in No. 4782. After Safeway's counsel protested this *ex parte* proceeding, the District Judge set Safeway's motion to dismiss and Allentown's petition to file amended answer and counterclaim, down for hearing on January 27, 1950. At this hearing, the motion to dismiss in No. 4840 was granted, but the amended answer and counterclaim in No. 4782 were allowed.

The case on its merits was heard by the District Judge after counsel waived trial by jury. In the original complaint, a verdict was found on behalf of the defendant, Allentown. In the counterclaim, a verdict was found in favor of Allentown in the sum of $4,861.65 against Safeway. Safeway has appealed to us.

The District Judge entered the following as verdict, findings of fact and conclusions of law:

"The verdict of the Court, sitting as a jury, is for the defendant, the Allentown & Reading Transit Company, on its counter-claim against the Safeway Trails, Inc., plaintiff, in the amount of $4,861.65, costs to be paid by the plaintiff.

"The facts with respect to the various parties involved in the collision and how the collision happened; the damage caused thereby, and to whom, and the amounts paid in settlement of the suits for these damages, brought in the Baltimore City Court, are as set forth in the complaint and are made a part of these findings.

"The Court makes the following additional findings of fact; no agreement was ever made between the parties, either orally or in writing, with respect to liability in the event of collision with a third party. By an entirely verbal understanding Safeway agreed to pay Allentown so much per mile for the hire of the latter's bus. All of the passengers on the bus at the time in question were Safeway passengers. The operator was continuously subject to Safeway's control. He took no orders from Allentown. That Safeway could not discharge, in the ordinary sense, the operator of the bus is not conclusive of the agency situation, nor the fact that the operator's wage or salary was not paid by Safeway but by Allentown. Safeway could lawfully have refused to permit him to operate the bus if Safeway had found reasonable ground for believing that he was not competent so to do, as, for example, if there had been evidence of reckless driving.

"It is not conclusive that Allentown had a certificate to operater over the route in question. Both parties had certificates so to do. They were required by law to have same.

"Therefore, the Court concludes as a matter of law that the plaintiff, Safeway, must reimburse the defendant, Allentown, for the losses which the latter suffered by reason of the collision in the amount of the verdict."

Two questions are presented on this appeal: (1) Did the District Judge commit reversible error by permitting Allentown to file the amended answer containing the counterclaim of Allentown against Safeway? (2) Did the District Judge commit reversible error in finding on the merits of the case in favor of Allentown and against Safeway? We think that both of these questions must be answered in the negative, so the judgment below must be affirmed.

The counterclaim of Allentown against Safeway is, under Rule 13(a), Federal Rules of Civil Procedure, a compulsory counterclaim, since "it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim". It must accordingly, under the Rule, be set up in Allentown's pleading, and, if this is not done, it cannot be later made the basis of a civil action by Allentown against Safeway. Allentown, thus, violated the Rule by filing an answer in Safeway's civil action without setting out the counterclaim in this answer, and then by filing a civil action against Safeway.

■ Later, the District Judge allowed Allentown to dismiss its civil action against Safeway and to file an amended answer (which contained the counterclaim) in Safeway's civil action against Allentown. Safeway protested, without avail, the District Judge's leave to Allentown to file this amended answer, which was obtained without notice to Safeway's counsel.

Rule 13(f), Federal Rules of Civil Procedure, reads:

"Omitted Counterclaim. When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment."

We think, under this rule, there was no abuse of discretion by the District Judge.

Allentown's counsel, in the pre-trial negotiations prior to the filing of the suit by Safeway, admitted that he had told Safeway's counsel: "If you file suit against us, I will file a counter-suit." He further stated that he had not read the Federal Rules of Civil Procedure and offered apologies for his ignorance. There was no element of surprise on the part of Safeway, which had been duly apprized of Allentown's intention to interpose its own claim against Safeway, and no undue hardship was imposed upon Safeway. On the other hand, had the District Judge refused to allow the interposition of Allentown's counterclaim in the amended answer, a real injustice would have been done to Allentown.

We now come to the decision below on the merits. In the second count of its complaint in Safeway's civil action against Allentown, is set out an alleged oral contract providing that Allentown was to assume sole and complete responsibility with reference to any claims, arising out of the operation of the leased bus, made by Safeway ticket holders or by third persons.

■ Evidence was introduced by Safeway which, if believed, would show the existence of such a contract; but, on the other hand, testimony was put in by Allentown tending to show that no such oral contract ever existed. Thus was presented a pure question of credibility of witnesses. This is peculiarly the province of the trial judge, who saw and heard the witnesses. Accordingly, we cannot disturb the finding of the District Judge: "No agreement was ever made between the parties, either orally or in writing, with respect to liability in the event of collision with a third party." We might remark, however, that, in the light of modern accepted business practices, the leaving of so important a matter to an informal and oral agreement rather than to a written contract, is, to say the least, quite unusual.

■ We think that only one other point in this case requires mention. Was Muth, the driver of the hired bus, subject to the control of Safeway, the lessee of the bus?

The District Judge, on this point, found: "By an entirely verbal understanding Safeway agreed to pay Allentown so much per mile for the hire of the latter's bus. All of the passengers on the bus at the time in question were Safeway passengers. The operator was continuously subject to Safe-

way's control. He took no orders from Allentown. That Safeway could not discharge, in the ordinary sense, the operator of the bus is not conclusive of the agency situation, nor the fact that the operator's wage or salary was not paid by Safeway but by Allentown. Safeway could lawfully have refused to permit him to operate the bus if Safeway had had reasonable ground for believing that he was not competent so to do, as, for example, if there had been evidence of reckless driving."

There was ample evidence to sustain this finding, both in the testimony adduced and in the logic of the surrounding facts and circumstances. This finding, accordingly, must not be disturbed by us.

In Dippel v. Juliano, 152 Md. 694, at page 699, 137 A. 514, at page 516, it was said: "Upon these cases and the reasoning upon which they rest it is difficult to formulate any sounder test for determining whether at the time of the accident the chauffeur was the employee of the owner or the borrower than that of the power of control and direction. * * * And whereupon the evidence that fact depends upon the adoption of one or more varying but nevertheless legitimate inferences which may be drawn from conceded or undisputed facts, * * * the question is usually one for the jury."

See, also, Salowitch v. Kres, 147 Md. 23, 127 A. 643; American Sugar Refining Co. v. Gilbert, 145 Md. 251, 125 A. 692; Salmons Dredging Corporation v. Herma, 4 Cir., 180 F.2d 233; Malisfski v. Indemnity Ins. Co. of North America, 4 Cir., 135 F.2d 910; Burns v. Jackson, 53 Cal. App. 345, 200 P. 80; Olson v. Clark, 111 Wash. 691, 191 P. 810; Core v. Reshas, 140 Tenn. 408, 204 S.W. 1149; Donovan v. Laing Construction Syndicate (1893) 1 Q.B. 629. Germane here in this statement, American Law Institute, Restatement of Agency, Section 227, page 502, Comment A: "Upon this question the fact, that the general employer is in the business of renting machines and men is relevant, since in such case there is more likely to be an intent to retain control over the instrumentality. *A person who is not in*

*such business and who, gratuitously or not, as a matter not within his general business enterprise permits his servant and instrumentality to assist another, is more apt to surrender control."*

The judgment of the District Court is affirmed.

Affirmed.