**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LOCAL 90, OPERATIVE PLASTERERS AND CEMENT MASONS' INTERNATIONAL ASSOCIATION OF the UNITED STATES AND CANADA, AFL–CIO, Respondent.**

No. 78–2071.

United States Court of Appeals, Seventh Circuit.

Argued May 30, 1979.

Decided Sept. 25, 1979.

Frederick Havard, NLRB, Washington, D. C., for petitioner.

Barry J. Levine, St. Louis, Mo., for respondent.

Before PELL, Circuit Judge, GEWIN, Senior Circuit Judge,* and WOOD, Circuit Judge.

PELL, Circuit Judge.

In this case the NLRB petitions for enforcement of its order against the respondent union, Local 90, Operative Plasterers and Cement Masons' International Association. The Board found that the union violated Section 8(b)(1)(A) of the National Labor Relations Act by taking coercive action against an employee for filing charges against the union with the NLRB. The union raises two issues in response to the Board's application: first, whether evidence obtained by the complainant in violation of Illinois law was admissible at the hearing, and, second, whether the Board's findings are supported by substantial evidence.

Between August 1974 and July 1977 the Southern Illinois Builders Association and the respondent union were parties to a collective bargaining agreement requiring the association to recruit employees through referrals by the respondent. To participate in the referral system, an employee was to call Dean Turner, the union business representative in charge of the system, at a union telephone kept in Turner's home. The employee would request placement on the "idle list," which Turner maintained in the chronological order of the calls. Early each morning Turner filled job vacancies by calling employees in order of appearance on the list. If the employee accepted the job, his name would be removed form the list. After completing the job, an employee had to call Turner again to be put back on the list. If Turner called an employee about a job and the telephone call was not answered or the employee refused, the employee's name would be removed from the list until Turner received a new request from that employee. During the slow winter season employees referred to work received repeat referrals during the same week and were removed from the list at the end of the week.

The events at issue in this action occurred when an employee, Steve Bovinett, experienced a marked decrease in job referrals under the system in 1976. Bovinett filed an unfair labor practice charge against the union in July of that year, alleging that Turner engaged in discriminatory conduct. The NLRB Regional Director found the charge lacking in merit, and at the end of August 1976, the General Counsel denied Bovinett's appeal from that decision.

On October 19, Bovinett called Turner to inquire about work. Bovinett recorded this phone call, and Turner conceded the accuracy of the transcript admitted in evidence. During the conversation, Turner told Bovinett he would put Bovinett's name on the referral list, reminding Bovinett that failure to answer the phone resulted in removal from the referral list.

On October 20, Turner called Bovinett with a job referral, and Bovinett also recorded this conversation. Turner told Bovinett:

I don't know what you are going to do. I got some more charges from you yesterday from the legal counsel. The people in this Local just aren't going to work with you, Steve. You know. So, you're going to have to make it on your own. And, you know, . . . I don't really care. But, I know one thing, you better not mess up any work. You better take your card and travel it into some other local. Cause, you know a guy don't just charge . . . make a bunch of charges and cost the local a lot of money and the people in the local keep on working with you. So, I don't know what you are going to do. It's up to you. And like I said, and . . . You better do the work and better do it right. I got a dozen of letters here now from contractors who don't want you on the job. So, you know, you are on your own.

---

* Senior Circuit Judge Walter P. Gewin of the United States Court of Appeals for the Fifth Circuit is sitting by designation.

Furthermore, Bovinett testified that on the same day at the job site, Turner

came out and told me that I was costing the union money by filing these charges and that he had had ten letters from contractors now that didn't want me on the job and none of the men wanted to work with me and he told me that I had better get a travelling card and travel into some other local while I was still a member in good standing, which he did repeat about two times.

Later the same day, after finishing work, Bovinett called Turner and spoke to his wife. This conversation was recorded. Bovinett asked to have his name placed on the idle list. Mrs. Turner said she would do so. Despite Mrs. Turner's assurances, Turner testified that Bovinett's name was not on the list from October 20 to November 16. Furthermore, according to Bovinett, when he asked Turner on November 10 where his name was on the idle list, Turner told him that he had a few names ahead of his. On November 15, Bovinett wrote a letter to Turner requesting copies of the idle list. Turner wrote back on November 17 denying the request.

Bovinett was not referred to a job until November 16, although the list had turned over several times after October 20. When Turner called Bovinett on the 16th of November, another call recorded by Bovinett, he told Bovinett that he knew that Bovinett had been trying to find out the job referral rate of other union members. Turner also told Bovinett that he had "better be able to do the work." Turner, however, would not tell Bovinett what the work was and Bovinett refused the referral for "personal safety" reasons. Later that day, Bovinett made a call, again recorded, to find out whether he was on the list. Mrs. Turner answered the phone, and Bovinett asked her to put his name on the list if it was not there. She agreed to do so.

Bovinett's name did not actually go on the list again, however, until June 7, 1977. Bovinett did receive a referral on December 21, 1976, but other employees on the list received at least one referral before Bovinett. Bovinett received only one other referral, on June 6, 1977, before his name was placed on the list again on June 7.

The Board found that the union violated Section 8(b)(1)(A) of the Act. The Board found that because of Bovinett's protected activities, the union threatened him with reprisals in the form of loss of future referrals, refused to place his name on the referral list, refused to refer him to jobs, and refused to furnish copies of the list, to which Bovinett was entitled. The Board's order requires the union to cease and desist from " . . . restraining or coercing referral applicants in the exercise of their section 7 rights." The order also requires the union to compensate Bovinett for lost earnings and to place him on the idle list, to refer him to employers, and to post appropriate notices.

◼ Preliminary to our discussion of the issues, we note that there is no disagreement that to constitute coercion or intimidation unlawful under Section 8(b)(1)(A), conduct need not actually discourage the exercise of an employee's rights. The conduct need only have a reasonable tendency toward this effect. *E. g., N.L.R.B. v. Service Employees International Union Local 254*, 535 F.2d 1335, 1337–38 (1st Cir. 1976). Furthermore, the discrimination against an employee in the operation of a referral system by refusing to refer and failing to include the employee on a hiring list constitutes coercive conduct within the meaning of Section 8(b)(1)(A). *See e. g., Local 357, International Brotherhood of Teamsters v. N.L.R.B.*, 365 U.S. 667, 81 S.Ct. 835, 6 L.Ed.2d 11 (1961); *N.L.R.B. v. Chicago Roll Forming Corp.*, 418 F.2d 346 (7th Cir. 1969). Finally, we must accept the Board's conclusions on these issues if they are supported by substantial evidence on the whole record.

◼ We now turn to the respondent's arguments for denial of the Board's application. It is not disputed that Bovinett's use of a recording device during the telephone conversations with Turner and his wife violated Ill.Rev.Stat. ch. 38, § 14–2(a) and that

Illinois courts would not admit these recordings as evidence at trial.[1] Nevertheless, we conclude that the recordings and the transcripts of recordings were without question admissible at the Board hearing.

Section 10(b) of the NLRA says that hearings " . . . shall, so far as practicable, be conducted in accordance with the rules of evidence applicable in the district courts of the United States under the rules of civil procedure for the district courts . . . ." The Union has not argued that the recording violated any federal statute or the Constitution. It is settled that federal, not state law governs admission of evidence in federal proceedings. Furthermore, this Circuit has held that evidence seized in violation of the Illinois eavesdropping statute is admissible in federal criminal proceedings. *United States v. Horton*, 601 F.2d 319 (7th Cir. 1979); *United States v. Krol*, 374 F.2d 776 (7th Cir. 1967), *cert. denied*, 389 U.S. 835, 88 S.Ct. 46, 19 L.Ed.2d 97. We see no reason to apply a different rule in federal administrative proceedings in which federal law supplies the rule of decision. *Cf. Levitt v. H. J. Jeffries*, 517 F.2d 523, 525 (7th Cir. 1975) (state exclusionary rule not applied although state law supplied rule of decision in federal diversity case).[2]

■ The respondent union also challenges the sufficiency of the evidence. The union objects most vigorously to the attribution of actions of Turner's wife to the union, arguing that Turner's wife, cannot, on the basis of the evidence in the record be considered the agent of the union. Common law principles govern questions of agency under Section 2(13) of the NLRA, *N.L.R.B. v. Urban Telephone Corp.*, 499 F.2d 239, 243 (7th Cir. 1974), and it is settled that the Board may base a finding of an agency relationship on evidence that an individual " ' . . . was acting with the

knowledge and acquiescence of the Union and that he had implied authority to do what he did.' " *N.L.R.B. v. Local 135, International Brotherhood of Teamsters*, 267 F.2d 870, 873 (7th Cir. 1959), *cert. denied*, 361 U.S. 914, 80 S.Ct. 258, 4 L.Ed.2d 184 (quoting *N.L.R.B. v. International Brotherhood of Teamsters*, 228 F.2d 83, 84 (2d Cir. 1955). We think that the evidence that the union maintained what was, in essence, an office in the Turner home and the testimony that Mrs. Turner often answered the referral phone and added names to the list when her husband was away was substantial evidence of the knowledge and acquiescence on the part of the union in Mrs. Turner's activities on its behalf. The union's argument, based primarily on the lack of evidence that the union "authorized or ratified" Mrs. Turner's conduct, ignores the dictates of Section 2(13) of the Act, which provides that a labor organization's responsibility for the acts of any individual is not dependent upon actual authorization or subsequent ratification.

Finally, we have considered the union's other evidentiary arguments. These arguments consist mainly of recitation of evidence to impeach the evidence relied on by the Board in reaching its decision. The Board's findings, supported in great part by the union's own admissions, present a logical construction of the events in question, and the union's evidence raises no compelling reason to question them here.

Accordingly, the application for enforcement of the Board's order is hereby granted.

1. Bovinett in fact pleaded guilty to three counts of violating Ill.Rev.Stat. ch. 38, § 11–2(a). We do not agree with the union, however, that the status of Bovinett as an "admitted felon" alone makes his testimony so incredible that it must be stricken from the record and the credibility determinations of the Board reversed.

2. We note that this case does not raise a strong labor policy requiring exclusion of taped conversations. *Cf. Carpenter Sprinkler Corp.*, 238 N.L.R.B. No. 139 (1978) (tapes of collective bargaining negotiations excluded).