McDONALD'S CORPORATION *et al.*, Plaintiffs-Appellants, *v.* WILLIAM S.
LEVINE *et al.*, Defendants-Appellees.

Second District No. 81—151

Opinion filed July 26, 1982.—Supplemental opinion filed on denial of rehearing September 24, 1982.

Richard C. Schultz and Douglas S. Moore, both of Foran, Wiss and Schultz, of Chicago, for appellants.

Louis M. Rundio, Jr., and Theodore Groenke, both of McDermott, Will and Emery, of Chicago, for appellees.

JUSTICE LINDBERG delivered the opinion of the court:

This is an appeal from the dismissal by the circuit court of Du Page County of a six-count complaint brought by McDonald's Corporation (McDonald's) and two of its employees, Noel Kaplan and Dean Canterbury. Plaintiffs sought damages from William S. Levine, Gene Himmelstein, and Stephen Haberkorn, McDonald's franchisees in Arizona and their Illinois attorney, W. Yale Matheson for violation of the Illinois eavesdropping act (Ill. Rev. Stat. 1977, ch. 38, par. 14—1 *et seq.*).

Plaintiffs allege they discovered the eavesdropping and theft of documents from McDonald's corporate offices in March 1978 when, during discovery being conducted in a proceeding before the Federal District Court for the District of Arizona, tape recordings and documents were produced. The Arizona action, *William S. Levine et al. v. McDonald's Corporation, et al.,* filed in August 1977, alleged that McDonald's and 27 other defendants violated the Sherman Antitrust Act, Arizona antitrust laws, and certain trademarks and breached various contractual obligations. Matheson, an Illinois attorney, was one of the attorneys representing plaintiffs in the Arizona action.

The instant complaint alleges that the surreptitious recording of

telephone conversations and meetings in violation of the Illinois eavesdropping act occurred in 1976 and 1977. These conversations were among 21 surreptitiously recorded conversations of McDonald's employees which were made by defendants in Illinois, California, and Arizona during the period of August 1973 to February 1978. Among the conversations recorded was a meeting held in August 1976 attended by Kaplan, Canterbury, Levine, and Haberkorn, a telephone conversation between Kaplan and Himmelstein in November 1976, a telephone call between Kaplan and Haberkorn in February 1977, and a March 1977 telephone conversation between Kaplan and Haberkorn. The complaint alleges that on each occasion the recording was made secretly by defendants without the knowledge or consent of Kaplan, Canterbury, or McDonald's. In each instance the surreptitious recordings were given to Matheson for his use and publication.

The photocopied documents comprising 386 separate documents constituted a total of 1,088 separate pages. McDonald's alleges that one-half of the documents were physically stolen from the offices of McDonald's. McDonald's alleges that the other half were obtained by covert photocopying of the originals which were located in McDonald's offices and that the originals were then returned to their place in the files. The documents which were allegedly stolen and secretly photocopied were maintained by McDonald's in locked file cabinets which, in most cases, were located in secure areas and private offices. Only authorized personnel were permitted access to the documents.

McDonald's maintains that the stolen documents deal with the corporate business, finances and business relationships, and communications between officers, employees, and attorneys of McDonald's. Of the 1,088 allegedly stolen documents only 168 pages have any relationship to the instant defendants or to their franchises, and the balance would appear to have no relation to the instant defendants.

In its six-count complaint the plaintiffs alleged the following: Count I alleges that defendants violated the Illinois eavesdropping act (Ill. Rev. Stat. 1977, ch. 38, par. 14–1 *et seq.*), which prohibits the use of any eavesdropping device to hear or record any conversation unless done with the consent of all parties to the conversation. Specifically, Levine, Haberkorn and Himmelstein, each a McDonald's franchisee operating in Arizona are accused of surreptitiously tape recording the plaintiffs' meeting and telephone conversations by using concealed tape recorders and telephone devices. After the tape recordings were made, the defendants Levine, Haberkorn and Himmelstein turned them over to Matheson, an Illinois attorney, for his use and publica-

tion. The plaintiffs did not discover the existence of the tape recordings and transcripts until early 1978.

Count II alleges that the defendant Matheson violated the eavesdropping act in that he used and divulged the information contained in the tape recordings and transcripts of the recordings when he knew or should have known that the tapes and transcripts were obtained by illegal eavesdropping. The plaintiffs allege the defendants fraudulently concealed their activities of making the recordings and using the contents and they seek compensatory damages, injunctive relief prohibiting further eavesdropping and punitive damages, all as provided for under the eavesdropping act.

Count III alleges that the defendants Levine, Haberkorn and Himmelstein, conspired to steal and did steal from the offices of McDonald's numerous privileged, secret and confidential documents. The court further alleges that in furtherance of the conspiracy these three defendants conspired with Matheson to turn the stolen documents and copies therof over to Matheson for his use and publication. The plaintiffs allege the defendants agreed and conspired with each other to fraudulently conceal from McDonald's the fact that they stole and copied the documents. In count IV therefore defendants are charged with receiving, possessing and using the documents stolen from McDonald's when they knew or should have known the documents were stolen. Counts III and IV seek compensatory damages and punitive damages.

Count VI alleges that the theft and use of privileged communications between McDonald's and its attorneys violated McDonald's attorney-client privilege. No appeal is taken from that portion of the circuit court's order dismissing count V of the complaint alleging a violation of McDonald's right to privacy.

The issues before us are: (1) whether counts I and II alleging violatlions of the Illinois eavesdropping act are barred by the running of the statute of limitations found in sections 13 and 14 of the Limitations Act (Ill. Rev. Stat. 1977, ch. 83, par. 14 and 15) and if not, whether a violation occurred of the eavesdropping act (Ill. Rev. Stat. 1977, ch. 38, par. 14—1 *et seq.*); (2) whether the circuit court erred in dismissing counts I and II which were the claims of Noel Kaplan and Dean Canterbury, on the basis that as employees of McDonald's they are not real parties in interest in and action pursuant to a violation of the eavesdropping statute; (3) whether the court erred in dismissing counts III and IV on the ground that they are compulsory counterclaims under the Federal Rules of Civil Procedure; (4) whether the court erred in ruling that the count VI allegations of tortious interfer-

ence with the attorney-client privilege failed to state a cause of action; and (5) as to defendant Matheson, whether the court's dismissal of counts II, III, IV, and VI may be sustained on the ground that an attorney has immunity for using or divulging illegally obtained materials in the course of representation of his client in litigation. We affirm the order of the circuit court of Du Page County dismissing counts II, III, IV, and VI, and reverse and remand as to count I.

### COUNTS I AND II: LIMITATIONS ISSUE

Defendants argue that the claims in counts I and II alleging violations of the eavesdropping act (Ill. Rev. Stat. 1977, ch. 38, par. 14—1 *et seq.*) were barred by section 13 of the Limitations Act, which provides that actions for slander and libel or for publication of matter which leads to invasion of privacy must be commenced within one year. (Ill. Rev. Stat. 1977, ch. 83, par. 14.) Defendants contended in their motion that since the last recorded telephone conversation in Illinois known to plaintiffs occurred in March 1977, the complaint should have been filed no later than March 1978. Plaintiffs maintain that the five-year limitation of sections 15 and 22 are the appropriate limitations for the causes of action alleged in counts I and II. Ill. Rev. Stat. 1977, ch. 83, pars. 16 and 23.

■ Defendants argue that the one-year limitation of section 13 of the Limitations Act applies because it has been determined that eavesdropping activities can constitute a form of invasion of the right of privacy known as "intrusion upon seclusion." (See Restatement (Second) of Torts sec. 652B, Comment *b* (1965).) Defendants conclude that section 13 applies to counts I and II because these counts allege an intrusion upon seclusion which is rooted in section 13. Defendants' argument is misplaced since section 13 only applies to actions for slander or libel arising out of a publication of matters violating the right of privacy. (*Winrod v. Time, Inc.* (1948), 334 Ill. App. 59, 78 N.E.2d 708.) Counts I and II did not allege libel, slander, or publication of private matters and therefore section 13 does not apply.

Alternatively, defendants contend that the two-year statute of limitations of section 14 of the Limitations Act applies. (Ill. Rev. Stat. 1977, ch. 83, par. 15.) Section 14 provides in relevant part:

"Actions for *** *a statutory penalty* *** shall be commenced within two years next after the action accrue[s] ***." (Emphasis added.) Ill. Rev. Stat. 1977, ch. 83, par. 15.

The circuit court interpreted the Illinois eavesdropping act as constituting a statutory penalty governed by section 14. The court arrived at this conclusion even though it recognized that the eavesdrop-

ping act is "more accurately described as a statutory cause of action and not a statutory penalty." The difficulty the circuit court had in reaching its decision to bar counts I and II is apparent from the order itself. After holding that section 14 applies, the court concluded that the provisions of the eavesdropping act are vague stating:

"I have just considered that the usual civil remedies of injunction and actual and punitive damages do not squarely fit the general concept of a 'penalty' and that Section 14—6 of the Eavesdropping Act may be more accurately described as creating a statutory cause of action rather than a statutory penalty."

Thus, the circuit court recognized that the eavesdropping act was actually a statutory cause of action rather than a statutory penalty. The difficulty the court experienced in counts I and II within the provisions of the two-year limitations of section 14 is explicitly revealed by the court's criticism of the ambiguity of the eavesdropping act:

"The fault lies in the vagueness of Section 14—6 in failing to provide a limitation."

█ █ A statute is a statutory penalty if it imposes automatic liability for a violation of its terms and the amount of liability is predetermined by the act and imposed without actual damages suffered by the plaintiff. (*Hoffman v. Clark* (1977), 69 Ill. 2d 402, 429.) A statute is remedial when it gives rise to a cause of action to recover compensation suffered by the injured person. (*Schaefer v. H.B. Green Transportation Line, Inc.* (7th Cir. 1956), 232 F.2d 415, 418.) In *M. H. Vestal Co. v. Robertson* (1917), 277 Ill. 425, our supreme court held that a statute is remedial and not penal where it imposes liability only when actual damage results from a violation. In such a case, liability is contingent upon damage being proven by the plaintiff. Under a penal statute, liability is not contingent but imposed automatically when a violation of the statute is established. See also *Klages v. Kohl* (1906), 127 Ill. App. 70.

Section 14—6 of the eavesdropping act is entitled "Civil remedies to Injured Parties." The civil remedies are:

"(a) *** [A]n injunction by the circuit court prohibiting further eavesdropping by the eavesdropper ***;

(b) *** [A]ll actual damages against the eavesdropper or his principal or both;

(c) *** [A]ny punitive damages which may be awarded by the court or by a jury; ***." Ill. Rev. Stat. 1977, ch. 38, par. 14—6.

The three civil remedies to an injured party are not a statutory penalty but a codification of the traditional common-law remedies af-

forded to anyone whose rights have been tortiously violated. The injunctive relief is designed to prevent further eavesdropping—not to punish the eavesdropper. The award of all actual damages or any punitive damages which may be awarded by the court or by a jury is identical to the relief available to any plaintiff in a tort action.

■■ ■ A statute requiring the payment of actual and punitive damages by a wrongdoer does not constitute a statutory penalty. Punitive damages have always been available in tort actions, provided requisite circumstances exist. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172.) Although punitive and compensatory damages may be awarded by a court or jury, the award does not flow automatically from a violation of the statute nor is the amount of damage predetermined by the statute. Therefore, we conclude that the eavesdropping act merely creates a cause of action in favor of one who has been the victim of eavesdropping. Under section 14—6 the victim must prove he is entitled to damages in the same manner as he would in any common law tort action. The eavesdropping act is a statutory cause of action invoking the limitations of sections 15 and 22 and not a statutory penalty. Ill. Rev. Stat. 1977, ch. 83, par. 15.

Since we have held that a two-year statute of limitations does not apply we do not need to address plaintiffs' argument that the "discovery rule" determines the date on which any applicable limitation period must commence. *Tom Olesker's Exciting World of Fashion, Inc. v. Dunn & Bradstreet, Inc.* (1975), 61 Ill. 2d 129.

### COUNTS I AND II: EAVESDROPPING ISSUE

We now address the merits of plaintiffs' complaint. Count I, brought by all the plaintiffs was based on an alleged violation of the Illinois eavesdropping act (Ill. Rev. Stat. 1977, ch. 38, par. 14—1 *et seq.*). It alleged that the franchisees, pursuant to an agreement among themselves, secretly recorded various business conversations between themselves and Kaplan and Canterbury. Only four conversations occurring between August 1976 and March 1977 were specifically alleged. McDonald's stated that it discovered the existence of the alleged recordings in 1978. Count I further stated that the franchisees gave the recordings to their attorney for transcription and "use." The manner of "use" was not pleaded. This count sought compensatory and punitive damages against the franchisees alone. Count III is also based upon the existence of a violation of the eavesdropping act. It alleged damages against attorney Matheson for using and divulging information which he knew or should have known violated the eavesdropping act.

Section 14—2 of the eavesdropping act provides:
"A person commits eavesdropping when he:
(a) Uses an eavesdropping device to hear or record all or any part of any conversation unless he does so (1) with the consent of all of the parties to such conversation or (2) with the consent of any one party to such conversation and in accordance with Article 108A of the 'Code of Criminal Procedure of 1963', approved August 14, 1963, as amended; or (b) Uses or divulges, except as authorized by Article 108A of the 'Code of Criminal Procedure of 1963', approved August 14, 1963, as amended, any information which he knows or reasonably should know was obtained through the use of an eavesdropping device." Ill. Rev. Stat. 1977, ch. 38, par. 14—2.

Defendants argue that the eavesdropping act requires an "interception" by a third party and a two-party conversation recorded by one of the parties cannot violate the act. We disagree. Throughout its 25-year history, including the amendments of 1969 and 1976, the act has never explicitly required an interception nor has any court required an interception. Several cases have found that a violation of the act occurred in two-party conversations where one of the parties recorded the conversation. *People v. Kurth* (1966), 34 Ill. 2d 387; *Stamatiou v. United States Gypsum Co.* (7th Cir. 1976), 534 F.2d 330; *NLRB v. Local 90, Operative Plasterers, Etc.* (7th Cir. 1979), 606 F.2d 189.

Based solely on *People v. Klingenberg* (1975), 34 Ill. App. 3d 705, 339 N.E.2d 456, as authority, defendants argue that courts have construed the statute to require an "interception." In *Klingenberg,* defendant contended that a custodial videotape made after his arrest for drunken driving violated the statute. The only issue in the case was whether defendant had a reasonable expectation of privacy at the time of the videotaping. The appellate court held that the statute did not apply because the defendant failed to demonstrate an expectation of privacy. The court commented that there was no interception of a private communication. Defendants in the instant case rely on this statement claiming that the court rendered a ruling requiring interception under section 14—1 *et seq.* of the eavesdropping act. Contrary to defendants' contention, *Klingenberg* did not construe the statute to require an interception. The court was merely considering a claimed violation of the statute which occurred when the sheriff intercepted a conversation by use of a video recorder. It held that such an interception does not fall within the statute where the defendant had no expectation of privacy. *People v. Klingenberg* (1975), 34 Ill. App. 3d 705,

708, 339 N.E.2d 456, 459.

Defendants also rely upon *Klingenberg* to support their argument that the expectation of privacy protected by the act is an objective not a subjective issue determinable as a matter of law on a motion to dismiss. However, *Klingenberg* held that the act applies only to communications intended by the declarant to be of a private nature (34 Ill. App. 3d 705, 708, 339 N.E.2d 456, 459). Clearly the intention of the declarant at the time the statement is made is a private, individual, subjective issue which cannot be determined strictly on the basis of any predetermined set of objective criteria and resolved on a motion to dismiss. *Brooks v. Midas-International Corp.* (1977), 47 Ill. App. 3d 266, 361 N.E.2d 815.

Citing two cases, defendants argue that a participant in a conversation involving business cannot, as a matter of law, have an expectation of privacy. Neither decision holds a business conversation to be beyond the act's protection or that certain types of conversations are as a matter of law, beyond the scope of the act. Defendants reliance on *People v. Myles* (1978), 62 Ill. App. 3d 931, 379 N.E.2d 897, is misplaced. In *Myles,* the court affirmed the trial court's decision rendered after a full evidentiary hearing to admit tape recordings of telephone conversations made from the jail lockup where there were signs stating that telephone calls would be monitored. The court merely held that under the facts of the case the defendant had no expectation of privacy. Defendants' reliance on *Cassidy v. American Broadcasting Companies, Inc.* (1978), 60 Ill. App. 3d 831, 377 N.E.2d 126, is also incorrect. The decision was based on a factual finding that plaintiff agreed to the filming and he demonstrated no expectation of privacy. (60 Ill. App. 3d 831, 836, 377 N.E.2d 126, 130.) *Cassidy* did not hold that certain conversations are not protected by the act, rather, the court held that an expectation of privacy is necessary and it must be determined on a factual analysis of each conversation.

■■■ In essence, defendants are urging this court to engraft the requirement of an "interception" onto the act. It is a basic rule of statutory construction that a court will not restrict or enlarge the plain meaning of a statute nor inject provisions into it. (*Bovinette v. City of Mascoutah* (1973), 55 Ill. 2d 129, 133.) Therefore, as to count I we conclude that the trial court erroneously dismissed the action as to McDonald's, and we reverse and remand.

### COUNT I AND II: KAPLAN AND CANTERBURY

McDonald's employees, Kaplan and Canterbury, were included only in counts I and II of the complaint; they made no claims in

counts III, IV or VI. In counts I and II, Kaplan and Canterbury specifically alleged they were McDonald's representatives in its communications with the franchisees. Nowhere did they allege that they were acting in their individual capacity at any time. The circuit court ruled that they had no claims separate and apart from any claim by McDonald's and counts I and II were dismissed as to them. The counts contain no allegations supporting a personal claim for injury to any interest of their own. Kaplan claimed to have been an officer and agent of McDonald's at all the pertinent times and Canterbury claimed to have been a regional manager and agent of McDonald's at all relevant times. It is significant that counts I and II alleged the recordings of a meeting between "McDonald's agents, Kaplan and Canterbury, and two franchisees." Plaintiffs' response to interrogatories inquired about the purpose of the meeting and telephone conversations indicated they were not acting in their individual capacities.

Kaplan and Canterbury argued that they were parties to the conversations within the meaning of sections 14—6 of the eavesdropping act. (Ill. Rev. Stat. 1977, ch. 38, par. 14—6.) This argument is based on the premise that Kaplan and Canterbury participated in the conversations in their individual capacities. But their pleadings and their own statements establish that they were only acting in a corporate representative capacity for McDonald's. Thus, the only parties to the conversations were the franchisees and McDonald's, not Kaplan and Canterbury. The fact that McDonald's brought the same claims under the eavesdropping act shows that McDonald's considers itself a party to the conversations. McDonald's could not have been a party to the business conversations if its employees were acting in their individual capacities rather than their corporate representative capacity.

Kaplan's and Canterbury's argument also is based upon a misinterpretation of a circuit court ruling. Contrary to their contention the circuit court did not create an exemption for the eavesdropping act for employees. The circuit court determined that because Kaplan and Canterbury acted in a corporate representative capacity any resulting claim was not theirs individually but belonged to their corporate employers. The circuit court did not determine that where an employee himself is injured during the course of his employment, he has no claim for injury to his person or to a personal interest. Therefore, if an employee is assaulted or slandered at work he would have a claim for injury to a personal interest. However, the case at bar is clearly different.

■ The cases relied upon by Canterbury and Kaplan do not establish that they, as individuals, have claims deriving from their repre-

sentation of McDonald's in the business conversations. *Bianco v. American Broadcasting Companies, Inc.* (N.D. Ill. 1979), 470 F. Supp. 182, and *United States v. Perkins* (N.D. Ohio 1974), 383 F. Supp. 922, are inapposite and not persuasive. Neither of those cases considered whether an employee had a claim when he was involved in a merely representative capacity.

Kaplan and Canterbury did not allege any injury to themselves or to their personal interest unlike the plaintiffs in *Schultz v. Chicago Great Western R.R. Co.* (1922), 226 Ill. App. 559. Thus, Kaplan and Canterbury assert no injury separate and apart from McDonald's. The circuit court properly dismissed their claims.

### COUNTS III AND IV: COMPULSORY COUNTERCLAIMS

■ Counts III and IV charged the franchisees with converting documents from McDonald's and also with photocopying documents located in McDonald's offices. The franchisees and their attorney Matheson are also charged with possessing and using the documents and photocopies with actual or constructive knowledge that the materials had been obtained without McDonald's consent.

The circuit court held that these counts stated causes of action but should have been brought as compulsory counterclaims in the Arizona action, in order to avoid a multiplicity of suits. The court stated that the documents were logically related to the Arizona proceeding.

McDonald's contends that counts III and IV are not compulsory counterclaims because the claims do not arise out of the transaction or occurrence that is the subject matter of the opposing party's claim as required by the Federal rules (Fed. R. Civ. P. Rule 13(a).) The first ground of McDonald's argument is that the majority of the documents did not relate to the Arizona dispute. The second ground is that there is no logical relationship between the legal theories involved in the two actions.

The fact that the two actions in Arizona and Illinois will involve the same evidence is one reason for treating the second action as a compulsory counterclaim. (*Great Lakes Rubber Corp. v. Herbert Cooper Co.* (3d Cir. 1961), 286 F.2d 631, 634 (claims are logically related where they involve many of the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties).) The courts have consistently held that Rule 13(a) of the Federal rules is to be liberally construed to avoid a multiplicity of lawsuits. *Warshawsky & Co. v. Arcata National Corp.* (7th Cir. 1977), 552 F.2d 1257, 1261.

Here, the situation is not merely that the two claims will partially

involve the same evidence. Rather, the very use of certain evidence in the first case was the violation charged in the second case. This case is similar to several cases where plaintiff's pursuit of his action was the basis for defendant's counterclaim in the same action. *E.g.*, *Newburger, Loeb & Co. v. Gross* (2d Cir. 1977), 563 F.2d 1057, *cert. denied* (1978), 434 U.S. 1035, 54 L. Ed. 2d 782, 98 S. Ct. 769; *United Artists Corp. v. Masterpiece Productions, Inc.* (2d Cir. 1955), 221 F.2d 213.

In the case at bar, the two actions are interdependent in the matters of evidence and the use of such evidence. Additonally, the two actions are logically related as matters growing out of the franchise relationship between McDonald's and the franchisees. McDonald's has admitted that many of the documents in question are relevant to the subject matter of the Arizona litigation and may well be used as evidence in that litigation. The court in *Crest Auto Supplies, Inc. v. Ero Manufacturing Co.* (7th Cir. 1966), 360 F.2d 896, held that, where, as in the case at bar, a franchisee files a Federal antitrust claim against the franchisor, all counterclaims by the franchisor based on franchise-related activities are compulsory under Federal Rule 13(a). The circuit court correctly held that these counts should have been brought as compulsory counterclaims in the Arizona action.

### COUNT VI: ATTORNEY CLIENT PRIVILEGE

██ ██ The circuit court correctly dismissed count VI because the invasion of the attorney-client privilege is not a recognized cause of action. The attorney-client privilege is a rule of evidence, not a substantive right. (*In re Walsh* (7th Cir. 1980), 623 F.2d 489, *cert. denied* (1980), 449 U.S. 994, 66 L. Ed. 2d 291, 101 S. Ct. 531.) McDonald's failed to cite, and our research failed to disclose, case support for the proposition that it has an affirmative, independent cause of action for violation of the privilege separate and apart from the causes of action alleged in other counts in the complaint.

██ ██ Even if "invasion" of the attorney-client privilege were a recognized cause of action, count VI failed to properly allege sufficient facts to establish the existence of the privilege in the case at bar. A mere assertion that documents are privileged is not sufficient to establish the privilege. (*Shere v. Marshall Field & Co.* (1974), 26 Ill. App. 3d 728, 327 N.E.2d 92.) The party asserting the privilege bears the burden of establishing all the elements of the privilege. (*Cox v. Yellow Cab Co.* (1975), 61 Ill. 2d 416.) Our supreme court has set forth these elements as follows: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence

(5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." (*People v. Adam* (1972), 51 Ill. 2d 46, 48, *cert. denied* (1972), 409 U.S. 948, 34 L. Ed. 2d 218, 93 S. Ct. 289.) In addition, where a corporation is the client, it must demonstrate that the communication was between counsel and someone within the corporations's control group. *Cox v. Yellow Cab Co.* (1973), 16 Ill. App. 3d 665, 306 N.E.2d 738, *aff'd* (1975), 61 Ill. 2d 416.

 Count VI contained no facts showing the applicability of the attorney-client privilege to the documents in question. The complaint did not even state sufficient facts necessary to identify each document. Instead, it only made conclusory allegations that an unidentified mass of documents was "confidential," "private," "secret," or "privileged." Since the mere passing of communications between an attorney and his client is insufficient to invoke the privilege, these allegations were insufficient to establish any privilege. (*People v. Doe* (1977), 55 Ill. App. 3d 811, 371 N.E.2d 334.) Thus, count VI was properly dismissed by the circuit court.

### COUNT II, III, IV, AND VI: MATHESON

 Count I, which related to the allegedly improper making of certain recordings, sought no relief from defendant Matheson. In count II he was charged with simply "using and divulging" the alleged recordings. Counts III and IV, which addresses the alleged conversion of McDonald's documents, did not name attorney Matheson as a co-conspirator to the conversion. Rather the counts charged him with "using and divulging" the information contained within the documents. Count VI which related to the alleged invasion of attorney-client privilege only made a conclusory claim that Matheson "read and used" allegedly privileged documents. No specific facts were pleaded and therefore these counts fail to state a cause of action against Matheson for use and divulgence. (*McGill v. Lazzaro* (1980), 92 Ill. App. 3d 393, 416 N.E.2d 29; *Moore v. Everett Snodgrass, Inc.* (1980), 87 Ill. App. 3d 388, 408 N.E.2d 1166; *Burke v. Sky Climber, Inc.* (1974), 57 Ill. 2d 542.) Therefore, the circuit court correctly dismissed counts II, III, IV, and VI.

In summary, we reverse the judgment of dismissal on count I as to McDonald's and remand for further proceedings. We conclude that the five-year provision of sections 15 and 22 of the Limitations Act (Ill. Rev. Stat. 1977, ch. 83, pars. 16 and 23) are the applicable statutes of limitations. We conclude that an interception is not required under the Illinois eavesdropping act. In regard to Kaplan and Canter-

bury, counts I and II were properly dismissed because they are not real parties in interest. Counts III and IV were properly dismissed because they are compulsory counterclaims in the Federal action in Arizona. Count VI, which alleged a tortious interference with the attorney-client privilege was properly dismissed as failing to state a recognized cause of action in Illinois. Further, as to defendant Matheson, the circuit court's dismissal of counts II, III, IV, and VI are affirmed on the ground that no cause of action was stated by plaintiffs.

Affirmed in part; reversed and remanded in part.

VAN DEUSEN and HOPF, JJ., concur.

Supplemental Opinion on Denial of Rehearing

JUSTICE LINDBERG delivered the the opinion of the court:

On August 16, 1982, McDonald's filed a petition for rehearing in the instant case. McDonald's argues that this court erred in its disposition of counts III and IV for four reasons. First, McDonald's contends that our decision marks the first time in the history of this State that an Illinois resident has been denied the right to file an action in Illinois alleging a violation of his rights under Illinois law due solely to a procedural rule of a foreign jurisdiction. Specifically, McDonald's argues that a decision which binds an Illinois resident to the compulsory counterclaim provisions of the Federal Rules of Civil Procedure, violates the long-standing Illinois policy that a party is not obligated to file a compulsory counterclaim.

At the outset we note that McDonald's raised this point for the first time on appeal and therefore we were not then and are not now required to address this argument. (*Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141; *First National Bank & Trust Co. v. City of Rockford* (1977), 47 Ill. App. 3d 131, 361 N.E.2d 832.) However, we choose to discuss this issue. The compulsory counterclaim rule is applicable even though State law has no such requirement. (*G&M Tire Co. v. Dunlop Tire & Rubber Corp.* (N.D. Miss. 1964), 36 F.R.D. 440; Note, *The Erie Doctrine and Federal Rule 13(a),* 46 Minn. L. Rev. 913 (1962); *cf. Sinkbeil v. Handler* (D. Neb. 1946), 7 F.R.D. 92; *O'Donnell v. Archie's Motor Express* (E.D. Pa. 1959), 176 F. Supp. 36.) Indeed, a counterclaim is compulsory under the Federal rules even though under relevant State law the party would lack capacity to bring on independent action on the claim. *Tolson v. Hodge* (4th Cir. 1969), 411 F.2d 123; *Avondale Shipyards, Inc. v. Propulsion Systems, Inc.* (E.D. La. 1971), 53 F.R.D. 341.

A more difficult question is whether the States must refuse to hear a suit that would be barred in Federal court for failure to have pleaded it as a compulsory counterclaim. It has been held that a Federal court may not enjoin prosecution in a State court of what should have been a compulsory counterclaim in a pending Federal action, but this is because of the general reluctance of Federal courts to enjoin State actions. These cases do not suggest that the States are free to disregard the failure of the pleader to put forward his Federal counterclaim. C. Wright, Law of Federal Courts sec. 79, at 391 (3d ed. 1976).

If Federal Rule 13(a) is a mere rule of procedure, then, on well-understood principles of conflicts of laws it should have no extraterritorial effect. But if it defines the scope of the cause of action to which *res judicata* will apply, or if it sets up an estoppel against the party who does not comply with it, the defendant should be barred no matter where he attempts to sue. The effect of a judgment as *res judicata* is substantive and other jurisdictions must regard it as being as broad and conclusive as it would be in the jurisdiction in which it was rendered. So too if a party so conducts himself as to erect an estoppel against prosecution of his claim, the estoppel is personal to him and may be asserted against him wherever he sues. On such reasoning a number of State courts have properly held a claim barred for failure to plead it as a counterclaim in a Federal action. (*London v. City of Philadelphia* (1963), 412 Pa. 496, 194 A.2d 901; *Horne v. Woolever* (1959), 170 Ohio St. 178, 163 N.E.2d 378, *cert. denied* (1960), 362 U.S. 951, 4 L. Ed. 2d 868, 80 S. Ct. 861; *Meacham v. Haley* (1954), 35 Tenn. App. 20, 270 S.W.2d 503; *Conrad v. West* (1950), 98 Cal. App. 2d 116, 219 P.2d 477; *Jocie Motor Lines, Inc. v. Johnson* (1950), 231 N.C. 367, 57 S.E.2d 388; see Vestal, *Claim Preclusion by Rule*, 2 Ind. Leg. J. 25 (1968); 6 C. Wright & A. Miller, Federal Practice and Procedure: Civil sec. 1417, at 101-02 (1971).) Therefore, there are numerous cases binding the resident of a State to the compulsory counterclaim provisions of the Federal Rules of Civil Procedure even though the party may not be obligated to file a compulsory counterclaim under that State's law. We find the reasoning of these cases persuasive and therefore find McDonald's first point to be without merit.

McDonald's second argument in its petition for rehearing is that this court has mistakenly determined that the stolen documents are relevant to the Federal claim and admissible in that proceeding. Specifically, McDonald's contends that this court has wrongly assumed that the stolen documents may have any relevancy to the antitrust

claims. We note that the tapes and documents were produced in the Federal action in response to McDonald's discovery requests. McDonald's acknowledged in its brief that at least 168 pages in the 386 documents at issue do relate to the franchise dispute. The Federal court will have to consider the overall circumstances under which the documents were obtained because these circumstances will directly bear on their admissibility and credibility as evidence against McDonald's. These very circumstances of acquisition are, of course, the elements of McDonald's present action in Illinois. Thus there will be wasteful duplication of judicial resources if two courts in different jurisdictions hear the same evidence. Additionally, there is the possibility that the two courts will reach contrary results. The fact that the two actions will involve the same evidence is one reason for treating the second action as a compulsory counterclaim. *Great Lakes Rubber Corp. v. Herbert Cooper Co.* (3d Cir. 1961), 286 F.2d 631.

Not only are the two actions intertwined in matters of evidence and the use of such evidence, they are also logically related as matters arising out of the franchise relationship between McDonald's and the franchisees. McDonald's demonstrated by filing count IX of its counterclaim in the Federal court that the fact the franchisees allegedly obtained the information in these documents without consent directly bore on the overall franchise relationship between the franchisees and McDonald's. Count IX alleged that McDonald's should be allowed to terminate their contract with the franchisees on the basis of frustration of purpose, because, among other things, the franchisees had secretly and improperly come into possession of copies of documents from McDonald's files.

McDonald's has treated the Federal action as though it only involved the franchisees' antitrust claims but the Arizona action also involves a multicount counterclaim by McDonald's which seeks to have the franchise agreements terminated on various grounds. Viewed in its entirety, therefore, the Federal action is very much concerned with the overall franchise relationship between the parties and particularly with the activities of the franchisees. As we stated in our opinion in a case in which a franchisee files a Federal antitrust claim against the franchisor, all counterclaims by the franchisor based on franchise-related activities are compulsory under Federal Rule 31(a). *Crest Auto Supplies, Inc. v. Ero Manufacturing Co.* (N.D. Ill. 1965), 246 F. Supp. 224, *aff'd* (7th Cir. 1966), 360 F.2d 896.

We note that although the issue of *res judicata* was extensively argued to the circuit court it declined to rely on this theory as a basis for its dismissal. The circuit court reasoned that *res judicata* was not

a proper ground for dismissal because the Federal case is still pending. The circuit court's rationale is erroneous because an interlocutory order dismissing certain counts of a counterclaim, while not an appealable judgment disposing of all issue in the lawsuit is, nevertheless, a final determination of the issues presented and is entitled to *res judicata* effect. (*Calvert Fire Insurance Co. v. American Mutual Reinsurance Co.* (N.D. Ill. 1978), 459 F. Supp. 859, 865, *aff'd* (7th Cir. 1979), 600 F.2d 1228.) Count IX of McDonald's counterclaim in the Federal action was based on the same facts as the instant case, involved the same parties or their privies, and was a final adjudication on the merits. (*Village of Northbrook v. Cook County* (1980), 88 Ill. App. 3d 745, 410 N.E.2d 925.) Thus, *res judicata* bars plaintiff's instant cause of action in this regard.

McDonald's third argument in its petition for rehearing is that a motion to dismiss a claim on the grounds that it must have been asserted as a compulsory counterclaim in an earlier action may be granted only if the prior action has proceeded to judgment. Since the Federal case is still pending, the claims asserted in counts III and IV cannot be dismissed until the Federal action proceeds to judgment. Although several Federal district court cases support McDonald's position, these decisions have been criticized as being inconsistent with the purpose of Federal Rule 13(a) since they permit duplicative litigation of the sort the rule is intended to prevent. 6 C. Wright & A. Miller, Federal Practice and Procedure: Civil sec. 1418, at 103-08 (1971). See, *United Broadcasting Co. v. Armes* (5th Cir. 1975), 506 F.2d 766, *cert. denied* (1975), 421 U.S. 965, 44 L. Ed. 2d 452, 95 S. Ct. 1953.

McDonald's final argument is that even if Federal Rule 13(a) is controlling since the claims asserted in Counts III and IV were not available to McDonald's at the time its answer was served in the original Federal action, its assertion in the instant case is not barred. The purpose of the "time of serving" exception is to relieve the counterclaimant from the burden of having to allege contingent claims or be forever barred from bringing them. However, this principle is not applicable where, as here, the acts supporting the claim have been alleged as a counterclaim in the lawsuit. If a party chooses to interpose an excepted counterclaim the court will treat it as a compulsory counterclaim in most respects. In this way the policy against multiplicity of litigation underlying Federal Rule 13(a) is advanced since all the logically related claims will be tried in one action. 6 C. Wright & A. Miller, Federal Practice and Procedure: Civil sec. 1413, at 68 (1971).

If the counterclaimant chooses to assert a claim, he is required

under Federal Rule 13(a) to assert all of it, because the purpose behind the compulsory counterclaim is to consolidate all related claims in the same proceeding to preserve judicial economy. Regardless of whether McDonald's was originally required to plead the claims asserted in the instant case as a compulsory counterclaim in the Federal action, it became so obligated when it alleged the identical acts in the Federal action in count IX of its Federal counterclaim. If the Arizona Federal district court had not dismissed count IX, its adjudication would have required the Federal court to decide the legality of the alleged recordings, and the alleged copying of documents and any attempt to bring the same allegations in Illinois would have been duplicative of the Federal action. Count IX was dismissed in the Federal action, and we cannot allow McDonald's to avoid the jurisdiction of the Federal court and to avoid the bar of *res judicata* which exists by reason of this dismissal.

We do not think our result is harsh because under Federal Rule 13(f), the courts have power, which has been liberally exercised, to permit amendments to assert a compulsory counterclaim that has been omitted. (*E.g., Safeway Trails, Inc. v. Allentown & Reading Transit Co.* (4th Cir. 1950), 185 F.2d 918; 6 C. Wright & A. Miller, Federal Practice and Procedure: Civil sec. 1430, at 157-58 (1971).) In a deserving case it is even possible to reopen the judgment under Federal Rule 60(b), and allow pleading of the omitted compulsory counterclaim after the first action has been terminated. *Williams v. Blitz* (4th Cir. 1955), 226 F.2d 463.

We conclude that the arguments raised by McDonald's in its petition for rehearing are without merit, and we adhere to the reasoning and result of our opinion.

Petition for rehearing denied.

VAN DEUSEN and HOPF, JJ., concur.